Georgia Lee Miller ROULO,
Plaintiff–Appellee,
Cross–Appellant,

v.

RUSS BERRIE & CO., INC.,
Defendant–Appellant,
Cross–Appellee.

Nos. 88–2270, 88–2600.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1989.

Decided Oct. 2, 1989.

Rehearing and Rehearing En Banc
Denied Nov. 9, 1989.

William T. McGrath, Michael P. Connelly, Chadwell & Kayser, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Charles A. Laff, Lawrence R. Robins, Larry L. Saret, Howard B. Rockman, Laff, Whitesel, Conte & Saret, Chicago, Ill., for defendant-appellant, cross-appellee.

Before CUMMINGS, WOOD, Jr., and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant, Russ Berrie & Co., Inc. (Berrie), appeals from a judgment entered on a jury verdict of $4.3 million in favor of plaintiff, Georgia Lee Miller Roulo (Roulo), for infringement of her copyright and trade-dress rights in a greeting card line known as "Feeling Sensitive" (FS) cards. Roulo's FS cards are single-faced greeting cards with engraved sentimental messages appropriate for holidays and other emotional occasions. She first introduced her FS cards in July 1977 and promoted them herself until October of 1977, when she began negotiations with Berrie for a distribution agreement. The parties entered into a two-year contract under which Berrie would exclusively manufacture, distribute and sell FS cards, remitting 10% of the sales receipts to Roulo as compensation for the use of her cards, while Roulo retained the ownership of her copyright and trade dress.

The FS cards were sold by Berrie pursuant to the agreement from approximately April 1978 to April 1980. Roulo indicated in late 1979 that she did not intend to renew the contract, prompting Berrie to begin development of a comparable greeting card line to be known as "Touching You" (TY) to substitute for the lost FS product, which it introduced in July 1980 at the Chicago Gift Show. Roulo observed the TY line at the Chicago Gift Show where she was also promoting another line of greeting cards. This suit for infringement of her FS line under the Lanham (15 U.S.C.

§ 1051, *et seq.*) and Copyright Acts (17 U.S.C. § 101, *et seq.*) was filed in April 1982.

Roulo's action was tried to a jury in a bifurcated trial of liability and damages. The jury returned a verdict in her favor under both the Lanham and Copyright Acts, awarding Roulo $4.3 million in damages based on Berrie's profits from the TY line. Berrie has launched an exhaustive attack on the jury's verdict and the district judge's rulings on pre-trial and post-trial motions. Roulo has cross-appealed from the district judge's denial of attorney's fees.

Since Berrie's challenges on appeal inextricably involve the visual appearance of the two greeting card lines, and indeed a display of each was presented to the jury for a side-by-side comparison, a detailed description of each is necessary and black and white reproductions of the cards are appended to this opinion. Roulo's FS cards are beige, single-face (no fold) cards containing sentimental verses and frequently using ellipses written in Roulo's handwriting with brown ink. An example of a verse reads: "I want to shout and tell the world how much I love you ... but instead I'll just ... whisper." Flanking the message on the left and right borders are a series of four stripes, two silver foil stripes enveloping one brown and one colored stripe in the middle. The FS cards are displayed in a four-sided freestanding rotating rack, each side containing eight cards of the same colored stripe displayed vertically. At the top of the rack is a removable header bearing a sketch of Roulo's likeness, her name, and the words " 'Feeling Sensitive'... A lost and found department for those with feelings ... in search of the words." The backs of the FS cards indicate that the verses are taken from Roulo's book "I'll See You Sometime ... Between Now and Soon." Each card was priced at eighty cents.

The TY cards are designed for occasions similar to the FS line, employing like, although not identical, sentimental verses. The TY cards are identically sized and priced, single-face cards on cream paper with cursive written messages in brown ink. The cards combine two stripes of color on the left side and one colored stripe on the right side, none of which are in foil. A colored foil butterfly is superimposed on the left stripes. The TY cards were also displayed in a four-sided, 32–card rack with each side displaying a single color scheme.

I.

## TRADE–DRESS INFRINGEMENT

■ "Trade dress" refers to the total image of a product, including features such as "size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983). An infringement of the trade dress is proven if: (1) the plaintiff's trade dress is inherently distinctive or has acquired secondary meaning, (2) the plaintiff's trade dress is primarily non-functional, and (3) the defendant's trade dress is confusingly similar, engendering a likelihood of confusion in the marketplace. *Am-Brit, Inc. v. Kraft, Inc.*, 805 F.2d 974, 978 (11th Cir.1986), certiorari denied, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822. As an affirmative defense, the alleged infringer may demonstrate that the trade dress has been abandoned. Prima facie evidence of abandonment is established by nonuse of the trade dress for two years, shifting the burden of production to the trade-dress owner to explain the nonuse or establish the existence of an intent to resume use. *Exxon Corp. v. Humble Exploration Co., Inc.*, 695 F.2d 96, 99 (5th Cir.1983). Berrie challenges the trade-dress verdict, arguing that Roulo failed to demonstrate that her trade dress was distinctive or had acquired secondary meaning, failed to establish a likelihood of confusion between the two greeting card lines, and failed to rebut the presumption of abandonment of the greeting cards arising from their nonuse for two years.

■ The purpose of trademark and trade-dress protection is to enable a business to identify itself efficiently as the source of a given product through the

adoption of a mark which may be in the form of a slogan, symbol, ornamental design or other visual insignia. A mark or trade dress which is fanciful, arbitrary or otherwise distinctive is given protection more readily than a generic or descriptive trademark or trade dress that is functional since appropriation of generic words, marks or dress would prevent producers from accurately describing or denoting the quality or content of their goods. *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir.1986). Hence common words necessary to describe the goods in question such as "greeting card" or a trade-dress element such as an envelope for a greeting card are not capable of appropriation, at least not in the absence of extraordinary evidence indicating secondary meaning, *i.e.*, that the common features have come to denote a single producer in the minds of the consuming public. It is therefore easier to secure protection for a fanciful mark or trade dress such as "Twinkie" than a more suggestive or descriptive mark such as "M–TV". When a trademark or trade dress is inherently distinctive or fanciful, it is unnecessary to make the further showing that the mark or dress has become associated with a single producer. *Blau Plumbing*, 781 F.2d at 608; *AmBrit*, 805 F.2d at 979. If the mark is not distinctive such that a showing of secondary meaning is required, it is not necessary that the public be aware of the identity of the producer, but simply that the public associate the mark or dress with a single source. *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 856 (7th Cir.1982).

Here Berrie asserts that Roulo has failed to demonstrate that the elements of her trade dress are distinctive or have acquired secondary meaning. Specifically, Berrie contends that Roulo's cards incorporated several common features such as stripes, dots, handwriting and other common design elements which are indigenous to all greeting cards and do not represent a trade-dress element capable of protection. To establish her claim of distinctiveness, Roulo introduced testimony of Sally Hopkins, a Hallmark cards curator, who testi-

fied that she was unable to find any cards in their collection from this century containing the same combination of elements as used in the FS line. In the alternative, Roulo introduced as evidence of secondary meaning the fact that her name and likeness appeared on the header to the rack displaying the cards, evidence of the success of her greeting cards as revealed by letters written to Berrie inquiring about Roulo's book of verse, an article in Greetings Magazine featuring her card line, and testimony by Berrie that her cards were as unusual as those of Boynton and Davis, other famous card designers. Roulo was also given 10% of sales, the highest percentage share of the sales receipts ever agreed to by Berrie for any card designer.

In order to undermine Roulo's evidence, Berrie simply asserts that Roulo failed to offer any evidence to demonstrate that her cards had acquired secondary meaning. Although Roulo did not offer any empirical evidence that consumers identified her trade dress with the Roulo name, there was certainly adequate evidence to allow the jury to conclude that Roulo's FS cards were distinctive. The adequacy of this evidence is augmented by Berrie's admission that the TY line was modeled after Roulo's FS cards once it was clear that Roulo would not renew her contract with Berrie. The fact that Berrie gave Roulo one of the highest commissions for her cards is also strong evidence that her line was unique. The fact that her cards incorporated common, indistinct elements such as lines and handwriting does not refute the fact that Roulo's combination of these elements was sufficiently unique to warrant trade-dress protection. Trade dress encompasses the overall appearance of a product, including its size, color or color combinations, texture, graphics, packaging or other visual features. *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1271 (10th Cir.1988), certiorari denied, —— U.S. ——, 109 S.Ct. 260, 102 L.Ed.2d 248. Roulo did not offer as much evidence on the secondary meaning of her cards as on their distinctiveness, no doubt since it is easier to show the cards

are unique than to poll greeting card consumers on whether they identify the FS cards with a single source. However, secondary meaning is not necessary where the trade dress is distinctive.

 Once a trade dress is found to warrant protection, the plaintiff must establish that defendant's trade dress is sufficiently similar to create the likelihood of confusion between the two greeting card lines. In assessing the likelihood of marketplace confusion, the factors to be considered include the similarity of the trade dresses, the products to which the trade dresses are attached, the area and manner of concurrent use, the degree of care likely to be exercised by consumers, the strength of the plaintiff's trade dress, and the actual confusion and intent on the part of the alleged infringer to pass off the infringer's goods as those of the plaintiff. *International Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1087 (7th Cir.1988). Berrie contends that the sole evidence of a side-by-side comparison at trial was insufficient to establish the existence of marketplace confusion. In addition, Berrie argues that its use of its own name on the header of the display rack demonstrates a lack of intent to infringe and militates against a finding of likelihood of confusion.

 Although side-by-side comparison is only one factor to be considered in evaluating the likelihood of confusion, the similarity in this instance is striking. The cards in each line are identically sized with handwritten messages containing ellipses in brown ink flanked by colored stripes imprinted on beige or cream-colored textured paper. The two lines of cards are displayed in identical racks (the TY rack is brass-toned and the FS rack is silver-toned) in four vertical rows of eight cards bearing the same color but varying messages for a total of thirty-two cards.

 In an attempt to accentuate the dissimilarities between the two card lines, Berrie points out that the TY line uses a foil butterfly and no foil stripes and the header on the display rack bears the name "Touching You" and identifies Berrie as the source of the cards. A side-by-side comparison, however, reveals that these differences are easily overlooked, especially given that the marketing channels for greeting cards do not promote a careful analysis of the product prior to purchase as indicated by Berrie's testimony that the cards were impulse purchase items. Berrie argues that the side-by-side comparison should not be given an inordinate amount of weight. However, where the trade dress relates to the same products which are sold side by side in retail channels, a direct visual comparison is appropriate, *AmBrit, supra* ("Klondike" and "Polar B'ar" brand ice cream bars), even though such a comparison may be inappropriate where a similar trade dress or mark is used on dissimilar products. *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266 (7th Cir.1976) ("Beefeater" used on restaurant sign and gin).

To further add to the confusion in the marketplace, Berrie's TY cards were sold through the same retailers as Roulo's FS line had been under her contract with Berrie. Had Roulo desired to market her FS cards through these retailers, the FS cards would have been displayed along with other greeting cards somewhere near the TY cards. The substantial visual similarity between the cards cannot be underestimated given that these cards are impulse purchase items likely to be marketed near each other at a price less than one dollar, discouraging much thoughtful research before purchase.

There was also sufficient evidence from which the jury could have discerned an intent to imitate Roulo's FS cards. Given the myriad of artistic expressions which could have been chosen for Berrie's greeting cards, the near identity of their appearance is itself strong evidence of copying. In addition, Berrie testified that once Roulo indicated that she would not renew her contract, Berrie began work on a card line to replace the FS cards to fit into the FS display with verses "a la Feeling Sensitive," the name of Roulo's line.

The strength of a particular trade dress relates in part to its uniqueness. As evidence of the strength of the FS trade

dress, in addition to the other testimony, Bill Dawson, Berrie's Vice President of Marketing, testified that the FS line of cards was the "finest sensitive verse greeting card line ever released." Thus, even absent the difficult-to-acquire evidence of actual confusion, there was adequate evidence for the jury, over and above the side-by-side comparison, to determine that the public was likely to confuse the two card lines.

Of slightly more merit is Berrie's assertion that Roulo abandoned her trade dress. After Roulo's contract with Berrie ended in April of 1980, she did not attempt to market the FS cards again but instead sought to publish a book of verse in the spring of 1980 which proved unsuccessful. Upon the termination of her contract with Berrie, Roulo was entitled, but declined, to receive the lists of distributors who had carried the FS cards and to receive any unsold inventory of the cards at Berrie's cost. At the Chicago Gift Show in the summer of 1980, Roulo had brought a new line of emotional verse cards to market when she discovered Berrie's TY cards. Later in January of 1981, Roulo released this new line of emotional verse greeting cards and marketed them until 1983.

A prima facie case of abandonment was established by Roulo's failure to use the FS trade dress for more than two years. 15 U.S.C. § 1127. However, this presumption may be rebutted by evidence explaining the nonuse or demonstrating the lack of an intent not to resume use. *P.A.B. Produits Et Appareils de Beaute v. Satinine Societa in Nome Collettivo di S.A. e. M. Usellini*, 570 F.2d 328, 334 (C.C.P.A.1978); *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1396 (9th Cir.1985); *Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 535 (2d Cir.1964). Some courts require the owner of the trade dress not used for over two years to demonstrate the intent to resume use. *Am-Brit*, 805 F.2d at 994; *Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 102–103 (5th Cir.1983); *Silverman v. CBS, Inc.*, 870 F.2d 40, 46 (2d Cir.1989). Other courts require the owner to prove the presumably lesser showing of the absence of

an intent to abandon. *Sterling Brewers, Inc. v. Schenley Industries, Inc.*, 441 F.2d 675 (C.C.P.A.1971); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980). We think the proper approach is to require evidence to demonstrate the intent not to resume use. This reading comports with the language of the statute and the seeming intent of Congress to prevent hoarding of trademarks where the owner has no intent to abandon, although no intent to resume use of the trademark within the reasonably foreseeable future. Intent to abandon connotes a permanent intent not to resume use which would be virtually impossible to prove. Our interpretation is consistent with the legislative history indicating that Congress substituted the present phrase "intent not to resume use" for the phrase "intent to abandon". See *Silverman*, 870 F.2d at 46. As noted in *Exxon*, this distinction is pivotal where the trademark or trade-dress owner is attempting to "hoard" the mark or dress with no intent to resume meaningful commercial use. *Exxon*, 695 F.2d at 102–103.

However, in contradiction to defendant's contention that the plaintiff must also bear the burden of persuasion on this affirmative defense, the owner of the trademark need only produce evidence to rebut the presumption while the ultimate burden of persuasion rests on the defendant. *Silverman*, 870 F.2d at 47 ("A proprietor who temporarily suspends use of a mark can rebut the presumption of abandonment by showing reasonable grounds for the suspension and plans to resume use in the reasonably forseeable future when the conditions requiring suspension abate."). Therefore it was not erroneous to refuse to give Berrie's proposed instruction No. 37 which would have placed the burden of proof on Roulo. The trial judge properly instructed the jury that the defendant must prove by a preponderance of the evidence that plaintiff abandoned the FS trade dress, that abandonment is found when use has been discontinued with intent not to resume use, and that such intent may be presumed from nonuse for two

consecutive years. Finally, the judge instructed: "The purely subjective intention in the owner's mind to reengage in a former enterprise at some further time is not, standing alone, sufficient to avoid abandonment." (Tr. 982).

As evidence of her intent to resume use within the reasonably foreseeable future, Roulo testified that she would have marketed the FS cards if the TY cards had not been developed. She cites her presence at the 1980 Chicago Gift Show as evidence of this intent. Berrie weakly contends that Roulo's failure to begin marketing her FS cards immediately or to purchase the remaining inventory indicates an intent not to resume use. Given that the evidence is meager on either side of the issue, the jury's special verdict that Roulo did not abandon her trade dress is not against the weight of the evidence. It was within the jury's prerogative to credit plaintiff's testimony against abandonment.

## II.

### COPYRIGHT INFRINGEMENT

To demonstrate an infringement of Roulo's copyright, Roulo must establish: (1) that she owns the copyright in question; (2) that Berrie had access to the copyrighted work; and (3) that there was substantial similarity between the two works. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir.1982), certiorari denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145. Defendant concedes the existence of the second element of the test but challenges the sufficiency of the evidence on the scope of Roulo's copyright and the jury's finding of substantial similarity between the two card lines. Roulo owns a registered copyright in the FS cards themselves as well as in a display header bearing her likeness, although she used a different, but similar, header than the one registered. Berrie claims that the material subject to copyright protection did not include the display rack, the pattern in which the cards were displayed, the header actually used and the price. Consequently, Berrie claims the judge erred in refusing to instruct the jury to render separate damage awards and in commenting that the trade dress and material protected by copyright were the same.

In *Atari*, this Court examined the idea/expression dichotomy in the context of video games to determine which elements of the Pac–Man video game were expression, subject to protection, rather than ideas which are in the public domain. In so doing, this Court stated that dissection of the subject matter into copyrighted and unprotected elements is generally rejected in favor of examining the "total concept and feel" of the copyrighted work. *Atari*, 672 F.2d at 614. The Court cautioned that while such dissection was not appropriate, the substantial similarity inquiry must "take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright." Such dissection is inappropriate since the substantial similarity inquiry is conducted from the perspective of the "ordinary observer" who "unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960).

As discussed above, the two card lines are strikingly similar in appearance. Further, the jury's finding of substantial similarity is buttressed by the evidence that Berrie patterned the TY cards after Roulo's cards. Berrie insists that the jury was allowed to consider elements of similarity unprotected by copyright laws, such as the size of the cards, the color of the paper, ink, and border designs, the general concept of stripes, the ellipses and the single-side format. While it is true that these elements are not individually capable of protection, just as individual words do not deserve copyright protection, it is the unique combination of these common elements which form the copyrighted material. The district court correctly instructed the jury by adopting the defendant's proposed instruction that the common elements noted above are not copyrightable, adding that "[t]he combination of these ele-

ments in an arrangement or layout is entitled to copyright protection, however, if you find that arrangement or layout to be original and unique." (Instruction No. 3). Defendant fails to acknowledge that its TY cards not only used the same unprotectable elements as the FS cards, but also used them in a format nearly identical to that used by the FS cards. It cannot be disputed that Berrie could have produced a non-infringing card with colored stripes, but Berrie used similar stripes flanking the verse on both the left and right side from top to bottom just as the FS cards did. The color of paper is unprotected, yet the TY cards are printed on a nearly identical beige paper. The use of cursive writing is also a common element as well as the brown ink used, yet TY cards, out of the entire range of colors and handwritings available, chose brown ink and a similar cursive writing. The minute differences which Berrie painstakingly incorporated to prevent a mirror image copy of FS cards are insignificant in light of the nearly identical composition and appearance used in both card lines. Berrie's contention that there is no support in law for the proposition that a compilation of common elements is subject to copyright protection is ridiculous. "[C]ards, considered as a whole, represent a tangible expression of an idea.... Greeting cards are protected under 17 U.S.C. § 5(a) or (k) as a book (citations omitted). They are the embodiment of humor, praise, regret or some other message in a pictorial and literary arrangement." *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970). Of course Roulo could not copyright the use of beige paper for greeting cards. Her copyright is in the artistic combination of all the common elements in the previously described design. There was ample evidence for the jury to find substantial similarity and the jury was properly instructed as to which elements were subject to copyright protection.

Berrie also contends that the district judge erroneously excluded an expert witness, a copyright lawyer, from testifying on the scope of protection to be afforded Roulo's copyright. Presumably the expert would have testified that the only material subject to copyright was the verse of the FS cards—which was not copied—and not the design of the cards as a whole. As previously noted, greeting cards have been held to be proper subjects of copyright as literary and pictorial compositions. *Roth*, 429 F.2d at 1110. The court correctly instructed the jury on which elements were subject to copyright protection without the assistance of the expert. There was no error in excluding this expert testimony.

## III.

## DAMAGES

### A. Merger of Trade–Dress and Copyright Claims

Berrie's barrage of challenges continues in its contention that the district judge committed reversible error by equating the subject matter protected by Roulo's copyright with the material cognizable under Roulo's trade dress infringement claim under the Lanham Act, although the jury was instructed individually and rendered separate verdicts as to liability under each Act. In so doing, Berrie asserts that features of Roulo's FS cards that were unprotected under copyright law but cognizable in a trade-dress infringement claim were considered by the jury in determining whether an infringement under either claim occurred. Specifically, Judge Kocoras explained: "Under the unique facts of this case, the protected copyright material is the same thing as the trade dress." Although the jury rendered separate verdicts in favor of the plaintiff on the trade dress and copyright liability claims, the jury assessed a single damage award. The district judge committed no error in instructing the jury to render a single verdict on damages since both the Lanham Act and the Copyright Act provide for the same measure of damages under like circumstances. Under each Act, the plaintiff is required to present proof of the infringer's gross revenues, with the burden on the infringer to establish any deductions for expenses or to demonstrate that the profits introduced by the plaintiff were either "at-

tributable to factors other than the copyrighted work," 17 U.S.C. § 504, or not attributable to infringing use under the Lanham Act. *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 586 (5th Cir.1980); 15 U.S.C. § 1117.

Berrie also contends that the district court should have directed a verdict against the recovery of profits under the Lanham Act because Roulo failed to demonstrate any actual damages, confusion, competition between the parties or wilfulness on the part of Berrie. The Lanham Act specifically provides for the awarding of profits in the discretion of the judge subject only to principles of equity. As stated by this Court, "The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir.1985). Other than general equitable considerations, there is no express requirement that the parties be in direct competition or that the infringer wilfully infringe the trade dress to justify an award of profits. See, *e.g., Baker v. Simmons Co.*, 325 F.2d 580 (1st Cir.1963), certiorari denied, 382 U.S. 820, 86 S.Ct. 49, 15 L.Ed.2d 67. Profits are awarded under different rationales including unjust enrichment, deterrence, and compensation. *Maltina*, 613 F.2d at 584–585, *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123–124 (9th Cir.1968), certiorari denied, 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879. The case of *Schutt Manufacturing Company v. Riddell, Inc.*, 673 F.2d 202, 206 (7th Cir.1982), cited by defendant addresses an award of plaintiff's damages based on plaintiff's actual losses rather than on defendant's profits. Where plaintiff seeks an award of damages, plaintiff must show that defendant's infringement caused those losses. Here, however, an award of profits was appropriate under either a deterrence or unjust enrichment theory even if plaintiff's actual sustained losses may have been less. Given the evidence of intentional imitation and the substantial similarity between the two card lines, the district judge's decision to instruct the jury that an award of profits would be appropriate was not an abuse of discretion.

In order to sustain her burden to demonstrate the amount of profits secured through sales of the infringing greeting cards, Roulo introduced expert testimony of John Moran, a Certified Public Accountant, who testified that Berrie's sales receipts of TY cards were $5.9 million and that the direct cost of producing the cards was $945,000. In order to meet its burden of proving all deductions from profits, defendant's witnesses, Steven Willis and A. Curtis Cooke, testified that incremental profits were only $2.9 million and that the amount of profits properly attributable to the protected elements after deductions for costs was $38,601. The jury was free to reject this calculation based on cross-examination testimony that documents evidencing the alleged operating expenses for certain years were lost in a fire and based on Berrie's general inability to substantiate his deductions. In addition, Berrie's witness, Willis, improperly deducted certain administrative expenses without demonstrating they were variable costs. Fixed costs are not deducted from the profit calculation.

Berrie also argues that the jury was not free to ignore its evidence apportioning profits between the infringing and non-infringing elements of the cards as required under 17 U.S.C. § 504(b). Berrie's evidence indicated that the infringing elements of the TY cards contributed to only $38,601 in profits using Berrie's gross profit figure, or $65,645 using Roulo's gross profit figure. An infringer is entitled to an apportionment when "the evidence is sufficient to provide a fair basis of division so as to give the copyright proprietor all the profits that can be deemed to have resulted from the use of what belonged to him." *Sheldon v. Metro–Goldwyn Pictures Corp.*, 309 U.S. 390, 402, 60 S.Ct. 681, 685, 84 L.Ed. 825. The burden of proving an apportionment is on the defendant. *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 518 (9th Cir.1985). The jury's verdict of $4.3 million rather than

the entire $5 million proposed by the plaintiff is evidence that the jury either apportioned the award or accepted some of Berrie's other deductions. Given that Berrie appropriated the "total concept and feel" of Roulo's cards, rather than a few distinct protected elements, the jury's failure to accept defendant's suggested apportionment is not against the weight of the evidence.

B. Laches

[30] As a final matter, Berrie contends that Roulo's recovery of profits should be barred by the equitable doctrine of laches due to her 21-month delay in filing this action after learning of the TY card line. Berrie asserts that it has established that: (1) Roulo had knowledge of the use of her trade dress or copyrighted material; (2) Roulo inexcusably and unreasonably delayed in filing this action; and (3) Berrie relied to its detriment and was prejudiced by Roulo's delay. *The Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 674 (7th Cir.1982). A two year delay in filing an action following knowledge of the infringement has rarely been held sufficient to constitute laches. *Piper Aircraft Corp. v. Wag-Aero, Inc.,* 741 F.2d 925, 933 (7th Cir.1984). Roulo explained that her delay in filing was due to her inquiry into the facts of the case to determine the merit of her claim against Berrie. Berrie has not cited any conduct to indicate that it actually relied to its detriment on Roulo's failure to bring suit sooner except for the actual marketing of the TY cards. Since Berrie began its promotion of the TY cards prior to any knowledge of Roulo or her purported acquiescence, Berrie cannot assert that its distribution of the TY line was made in actual reliance on Roulo's conduct. The jury's verdict was not against the weight of this evidence.

C. Attorney's Fees

■ Roulo claims that the district judge erroneously denied her attorney's fees under both the Lanham and Copyright Acts. The Lanham Act provides that attorney's fees may be awarded "in exceptional cases." This language apparently was intended to allow the recovery of fees "in infringement cases where the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" S.Rep. No. 1400, 93d Cong., 2d Sess. 2, reprinted in 1974 U.S.Code Cong. & Admin.News 7132, 7133. This Circuit has interpreted this section to require a finding of wilful infringement. *Hairline Creations, Inc. v. Kefalas,* 664 F.2d 652, 657–658 (7th Cir.1981). We agree with the district court that this was not an exceptional case warranting an award of attorney's fees. Berrie attempted to create a line of greeting cards similar to the FS line but made conscious efforts to create elements of dissimilarity, although the dissimilarities were not sufficient in this case.

■ The Copyright Act also allows the award of attorney's fees to the prevailing party in the discretion of the court. 17 U.S.C. § 505. Attorney's fees under this section have been awarded for the purposes of encouraging the assertion of colorable copyright claims, deterring infringement, and making the plaintiff whole. *McCulloch v. Albert E. Price, Inc.,* 823 F.2d 316, 321 (9th Cir.1987).

The district judge awarded costs to Roulo but denied attorney's fees under either Act on the basis that Berrie's conduct was not "flagrant" and that plaintiff received a substantial and considerable award of profits, such that an award of attorney's fees would be an unwarranted windfall to the plaintiff. This Court has determined that a finding of wilful copyright infringement will support an award of attorney's fees, although wilfulness is not necessarily a prerequisite. *International Korwin Corp. v. Kowalczyk,* 855 F.2d 375 (7th Cir. 1988), and cases cited therein. The Copyright Act is silent on the circumstances that warrant a fees award and the circuit courts are not in agreement on this issue. Some courts require a finding of bad faith or frivolousness. *Jartech, Inc. v. Clancy,* 666 F.2d 403 (9th Cir.1982), certiorari denied, 459 U.S. 826, 879, 103 S.Ct. 58, 175, 74 L.Ed.2d 62, 143; *Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973

(9th Cir.1987). Others award fees routinely to the prevailing party, especially to the plaintiff to encourage the assertion of colorable claims. *Diamond v. AmLaw Publishing Co.*, 745 F.2d 142, 148 (2d Cir. 1984); *The Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir.1985).

■ The district judge declined to award fees due to Berrie's lack of wilfulness and in light of the magnitude of the award of profits. Based on these considerations he did not abuse his discretion under any of the above rationales. Plaintiff secured an award of profits significantly greater than she would have received if she had renewed her contract with Berrie and perhaps more than she would have made if she had independently marketed the FS cards following the expiration of her contract with Berrie. Attorney's fees were not necessary to compensate the plaintiff and the defendant was sufficiently deterred by the substantial award of profits. Awarding fees to the plaintiff under these facts would serve only to sanction the defendant which is inappropriate where the infringement was not wilful.

The decision of the district court is affirmed, and the cross-appeal is dismissed.

## APPENDIX

(Roulo card)

**944**

*I don't want to wonder where my life would have gone without you... you are so important... to me*

(Berrie card)