**STORCK USA, L.P. and August Storck K.G., Plaintiffs,**

v.

**FARLEY CANDY COMPANY, INC., Defendant.**

No. 92 C 0552.

United States District Court, N.D. Illinois, E.D.

Jan. 31, 1992.

Larry L. Saret, Joseph F. Schmidt, John T. Gabrielides, Laff, Whitesel, Conte & Saret, Chicago, Ill., for plaintiffs.

James Dominick Adducci, Jeffrey Edward Schiller, Schuyler, Roche & Zwirner, Chicago, Ill., Alan S. Cooper, Banner, Birch, McKie & Beckett, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiffs Storck USA, L.P. and August Storck K.G. ("Storck") have moved the

court for a preliminary injunction enjoining defendant Farley Candy Co. ("Farley") from using any trade dress or trademark which is confusingly similar to the package used by Storck for its Werther's Original candy.

## FACTS

Since 1980, Storck has continuously distributed Werther's Original packaged hard butter toffee candy. From 1980 to 1988, the 8–ounce bag in which Werther's Original butter toffee candy was sold had a brown background, a picture of a mound of unwrapped candy on the front and back panels, and a design of an Alpine village and an old-fashioned container pouring a white liquid. (Harshman Declaration, Ex. 1.)

In May 1988, Storck revised its Werther's Original package by using a 7–ounce bag, changing the background color of the bag to blond, and by revising and expanding the village design. The village design was changed from a picture of a single container pouring white liquid to a picture of two pitchers pouring white liquid into a merged stream. The Village Design[1] prominently shows in the foreground two brown and orange pitchers pouring their white liquid contents into a merged stream. In the background of the Village Design is a "pastoral" image of a blue sky, green grass, flowers, a mountain range, and an Alpine village. The entire design is roughly oval in shape and is positioned in the left center portion of the front panel. The lower third of the front panel is a picture of a mound of the unwrapped butter toffee candy. The mound of candy extends around to the back panel where it is interrupted by a clear window which reveals the candy pieces inside the package individually wrapped in gold-colored foil. (See Pl.Ex. 1.)

Defendant Farley's package for its butter toffee candy is a bag in the same size (7 ounces) and in the same shape (rectangular) as the bag for Storck's Werther's Original butter toffee candy. (Pl.Ex. 2.) A design on the left center portion of the front panel of Farley's butter toffee package depicts a pair of containers, one orange and one brown, pouring their creamy liquid contents into a merged stream onto a mound of unwrapped candy positioned on the lower left portion of the front panel. The pouring containers are set against a green and blue background. The design is oval in shape. The background of Farley's bag is light yellow. A clear window in the lower right-hand corner of the front panel of the package displays the candy inside the bag individually wrapped with gold-colored foil.[2] (See Pl.Ex. 2.)

## DISCUSSION

Before a preliminary injunction will issue, the movant must show, as a threshold matter, that: (1) they have no adequate remedy at law; (2) they will suffer irreparable harm if the injunction is not granted; and (3) they have *some* likelihood of success on the merits in the sense that their chances are better than negligible. *Thornton v. Barnes*, 890 F.2d 1380, 1384 (7th Cir.1989) (emphasis in original). If the movant can meet this threshold burden, the inquiry then becomes a "sliding scale" analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits. *Id.* In particular, and keeping in mind that the public interest may become important in a given case, the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor in order to get the injunction; the less likely he is to win, the more need it weigh in his favor. *Id. See National People's Action v. Village of Wilmette*, 914 F.2d 1008, 1010–11 (7th Cir.1990).

---

1. The entire design on the Werther's Original package of the two pouring pitchers and the village background will be referred to as the "Village Design."

2. The oval-shaped "pouring containers" image on Farley's butter toffee package will be referred to as the "Butter and Cream Design." The Village Design on the Werther's Original package and the Butter and Cream Design on Farley's package will be collectively referred to as the "oval-shaped" scenes, designs, or images.

## I. LIKELIHOOD OF SUCCESS ON THE MERITS

■ Storck has brought its allegations under several legal theories. Because the court finds that Storck has established some likelihood of success on the merits with respect to its Lanham Act claim, and is entitled to a preliminary injunction on that basis alone, the court need not and does not address in this opinion Storck's likelihood of success on its other claims.

■ "Trade dress" refers to the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or other visual features. *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935–36 (7th Cir.1989). An infringement of trade dress is proven if: (1) the plaintiff's trade dress is inherently distinctive or has acquired secondary meaning, (2) the plaintiff's trade dress is primarily nonfunctional, and (3) the defendant's trade dress is confusingly similar, engendering a likelihood of confusion in the marketplace. *Id.*

■ The court is persuaded that Storck is likely to succeed in establishing that the Village Design, including the pouring pitchers scene, is distinctive and arbitrary. It is undisputed that the background Alpine scene is arbitrary. (Def.Mem. in Opp., p. 7.) While the image of cream may be considered descriptive of an ingredient in the candy, *see A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906–07 (7th Cir.1986) (indication of ingredients is merely descriptive), the embellished image of the cream pouring out of two old-fashioned pitchers into a merged stream serves no descriptive or otherwise functional purpose.

Farley attempts to undermine the claims of distinctiveness of the pouring pitchers image within Storck's Village Design by providing several examples of other food products which display a liquid, usually milk or cream, being poured from a container. (Def.Ex. 7–10.) All the examples provided are obviously distinguishable from the scenes displayed on the packages of Storck's and Farley's butter toffee candy. One of the products shows an upright wooden bucket of milk. (Def.Ex. 9.) There is no image of pouring on this package whatsoever. The other packages introduced by Farley show only one container pouring a liquid, and not two containers pouring liquid into a common stream. (Def.Ex. 7, 8, 10.) On two of the packages, the container which is pouring a liquid is presented by a photograph, and not a drawing, of a modern, and not an old-fashioned, pitcher. (Def.Ex. 7, 8.)

None of these products undermine in any way the distinctiveness of the pouring pitchers image on the Storck butter toffee candy package. The court holds that the Village Design, including the pouring pitchers image, is inherently distinctive, *see Roulo*, 886 F.2d at 937 (secondary meaning is not necessary where the trade dress is distinctive), and serves no functional purpose.

Other aspects of Storck's Werther's Original package are not distinctive or are functional and do not warrant the same protection as a distinctive, nonfunctional trade dress. The blond packaging of Werther's Original is descriptive or at least highly suggestive of the candy which it contains. Also, numerous other candy manufacturers use yellow or blond as the color of their packages. (*See* Def.Ex. 12.) Except for its across-the-bottom presentation,[3] the picture of the unwrapped butter toffee candy on the front and back panels of the Werther's Original package is highly descriptive of the candy product itself. Therefore, the court does not find that the blond color or the picture of the unwrapped candy on the Werther's Original package is arbitrary or otherwise distinctive. The window on the back panel of the Werther's Original package is functional since it serves to display the product to the consumer. No secondary meaning has been

---

**3.** Farley's Director of Marketing conceded that presenting the mound of candy picture across the entire bottom of the front panel would be confusingly similar to the Werther's Original package. (Raish Dep., p. 76.) Thus, such across-the-bottom presentation of the mound of candy has not, should not, and will not be allowed on Farley's butter toffee package.

established for these elements of the Werther's Original trade dress.

Storck must now establish that the distinctive elements of Farley's trade dress are sufficiently similar to create the likelihood of confusion between the two butter toffee candy products. Since the court has found that the Village Design is the only distinctive element of the Werther's Original trade dress, the court will limit its discussion to the likelihood of confusion caused by the similarity of the Farley's Butter and Cream Design to the Werther's Original Village Design.

■ In assessing the likelihood of marketplace confusion, the factors to be considered include the similarity of the respective trade dresses, the products to which the trade dresses are attached, the area and manner of concurrent use, the degree of care likely to be exercised by consumers, the strength of plaintiff's trade dress, actual confusion, and intent on the part of the alleged infringer to pass off the infringer's goods as those of the plaintiff. *Roulo*, 886 F.2d at 937.

■ To properly evaluate the similarity issue, the court must compare the marks in light of what occurs in the marketplace, and not the courtroom. *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir.1976). Where the trade dress relates to the same products which are sold side by side in retail channels, a direct visual comparison is appropriate. *Roulo*, 886 F.2d at 937.

The court does not find that all aspects of Farley's Butter and Cream Design are confusingly similar to Storck's distinctive Village Design. Specifically, the court finds that the only element of the Farley package which by itself is likely to cause confusion is the image in the oval design of the two containers pouring liquid into a common stream. The milk can and butter churn presented on a muted green and blue background absent the two pouring containers would not be confusingly similar to Storck's Village Design.[4] The only similarity in the respective packages' backgrounds is the green and blue coloring which is not sufficiently distinctive to warrant protection.

Farley argues dissimilarity of the designs by pointing to a difference between the "pouring pitchers" images, Storck's scene is comprised of two pitchers, both of which are pouring a white liquid, probably cream. Farley's scene includes two pitchers each of which are pouring differently colored liquids—one white and the other a light golden color. According to Farley, one pitcher is pouring milk (with the image of a milk can behind it) and the other pitcher is pouring liquid butter (with the image of a butter churn behind it). These are two of the ingredients in Farley's butter toffee candy.

Upon close inspection of the Farley scene, it is possible to notice that the colors of the two pouring liquids are slightly different (indicating milk and butter). However, such difference is highly unlikely to register in the consumer's mental picture of the entire package, especially given that these are impulse purchase items. The golden milk can and butter churn that stand behind the two pouring containers in the Farley Butter and Cream Design are unlikely to assist the consumer in distinguishing the two liquids. Thus, the court gives little weight to the minor dissimilarity of the liquids' colors in Farley's pouring containers scene.

Marketplace factors enhance the potential confusion to the consuming public. Farley intends to directly compete with Storck by selling its butter toffee candy in the same or similar retailers as Storck's butter toffee candy. In fact several of Storck's top ten customers (Pl.Ex. 71) are customers to which Farley has sought to sell its butter toffee candy. These competing products are likely to be displayed in

---

4. Several of the preliminary sketches for Farley's butter toffee package had the milk can and butter churn design without the pouring containers. (Pl.Ex. 23, 25, 26.) These preliminary sketches were rejected by Farley's Director of Marketing, Richard Raish. (Raish Declaration, ¶ 11.) The court would not have found any of these oval-shaped designs confusingly similar to the Village Design on the Werther's Original package.

close proximity to one another by retailers. The substantial visual similarity cannot be underestimated given that these products are impulse purchase items, sold at a relatively inexpensive price, and likely to be marketed near each other. In fact, candy products are arguably one of the strongest impulse items that consumers purchase. The purchase decision is made in a matter of five to eight seconds. Thus, little careful or reflective thought and deliberation go into such a purchase. *See AmBrit, Inc. v. Kraft, Inc.*, 805 F.2d 974, 984–85 (11th Cir.1986); *Tootsie Roll Industries, Inc. v. Sathers, Inc.*, 666 F.Supp. 655, 659 (D.Del. 1987).

The court realizes that elements of a trade dress should not be examined separately but in total. *Roulo*, 886 F.2d at 935. However, the court believes that the pouring pitchers scenes of the oval-shaped designs, with similarly colored green and blue background images (Compare Pl.Ex. 1 with Pl.Ex. 4), are images which immediately capture the attention of a consumer in such a way that they significantly impact the overall images used to present Storck's and Farley's respective products. Given the impulse-purchase nature of these candy products, no other aspect of the trade dress appears capable of distracting the consumer from the eye-catching character of the pouring pitchers scenes. Thus, the similar pouring pitchers images in the oval-shaped designs on the candy packages are likely to cause confusion in the marketplace as to the source of the candy inside the packages.

The market leadership of Storck's Werther's Original candy is evidence of the strength of that product's trade dress. Storck has presented evidence that reveals that Storck's product is the leader in the hard candy market. Storck's dollar sales for Werther's Original candy is over three times greater than its closest competitor. (*See* Storck's Motion for Temporary Restraining Order, Ex. 6.)

There is substantial evidence of intent on the part of Farley to copy the pouring pitchers image from Storck's Werther's Original package. Farley's Marketing Director, Richard Raish, admits that he gave three packages of competing candy, including the Werther's Original package, to Farley's hired outside graphics firm, Nolan Company, which was employed to design the artwork for the package of Farley's butter toffee candy. (Raish Dep., p. 63.) Raish reviewed five preliminary sketches from the outside firm. (Raish Decl., ¶¶ 11, Ex. A–E.) The sketch selected by Raish is the only one of the five sketches which contains an image of two containers pouring liquids into a merged stream. (*Id.*, ¶¶ 11, Ex. E.) One of the sketches not selected by Raish is almost identical in every respect to the sketch chosen by Raish. (*Id.*, Ex. D; Pl.Ex. 26.) Indeed, the only material differences between the sketch rejected by Raish and the sketch selected by Raish is that the latter has the pouring containers image and the former does not. Thus, the court must conclude that Raish, fully aware of the existence of a similar image on the package of Werther's Original candy, the market leader, considered the image of the two containers pouring their liquid contents into a merged stream to be material to his marketing decision. As discussed above, the pouring pitchers design on Storck's package (Pl.Ex. 1), which Farley's outside designer was provided, is arbitrary, distinctive, and highly similar to the pouring containers image on Farley's package of butter toffee candy. The inference drawn by the court from the manner in which Farley's butter toffee package was designed and selected by Farley's marketing director is that Farley intended to pass off its butter toffee product as Werther's Original candy to consumers in order to compete with Storck in the marketplace.[5]

## II. REMEDY AT LAW AND IRREPARABLE HARM

Irreparable harm may result from the loss of good will in a given product.

---

**5.** In fact, the court believes that, but for the across-the-bottom unwrapped candy presentations in three of the preliminary sketches (*see* note 3 *supra*), any of the four sketches that were not chosen by Raish would not have been confusingly similar to the trade dress of Werther's Original.

*Tootsie Roll Industries, Inc.*, 666 F.Supp. at 660. Because both Storck's and Farley's butter toffee candy products are likely to be sold in close physical proximity to each other in a retail store, it is likely that an appreciable number of customers will be misled, causing irreparable harm to Storck. Any loss of good will by Storck by its inability to control the quality of Farley's candy is difficult if not impossible to quantify in monetary terms. *See id.* Thus, the court concludes that Storck does not have an adequate remedy at law and that Storck will suffer irreparable harm if the injunction is not granted.

## III. SLIDING SCALE

### A. *Balance of the Harms to the Parties and the Public*

■ According to Storck, the preliminary injunction will not cause Farley any undue hardship because Farley has not yet begun shipping its product to retail stores or marketing it to the public. Meanwhile, Storck has expended millions of dollars promoting its packages and trademarks in order to become the leader in its product category. In the past three years alone, Storck has expended $17,000,000 promoting and advertising their Werther's Original candy. (Harshman Declaration, ¶ 8.) Storck's sales of the candy in the past three years has been in excess of $100,000,-000. (*Id.*, ¶ 9.)

Farley has argued that it would suffer substantial hardship if the preliminary injunction were to issue because Farley has orders for its butter toffee candy that are scheduled and ready to be shipped immediately. Farley claims that its good will would suffer if it fails to fulfill these orders. Farley will lose the funds that it expended creating and manufacturing the infringing packaging and will incur costs to destroy the infringing packaging and to create new noninfringing packaging for its butter toffee.

The irreparable harms to Storck resulting from the denial of the preliminary injunction are far greater than the harms to be suffered by Farley from granting the preliminary injunction. Furthermore, the public interest in avoiding marketplace confusion, in protecting product good will, and in fostering open and fair competition will be served by granting the preliminary injunction.

### B. *Actual Likelihood of Success on the Merits*

For the reasons set forth in Part I above, the court believes that the actual likelihood of success on the merits is substantial.

The more likely the plaintiff is to succeed on the merits, the less heavily the balance of harms needs to weigh in the plaintiff's favor in order to obtain injunctive relief. *Thornton*, 890 F.2d at 1384. The court believes that the balance of the harms clearly weighs in favor of granting Storck's motion for a preliminary injunction. Given Storck's substantial likelihood of success on the merits, and upon weighing the harms to the parties and the public, the court firmly believes a preliminary injunction must issue.[6]

## CONCLUSION

■ After careful consideration of the facts in light of the factors relevant to the issuance of a preliminary injunction, the court concludes that Storck is entitled to a preliminary injunction. The court, however, is mindful that preliminary injunctive relief should be limited to what is necessary in order to redress defendant's specific wrongful conduct. *See Mantek Division of NCH Corp. v. Share Corp.*, 780 F.2d 702, 711 (7th Cir.1986).

Specifically, defendant Farley is preliminarily enjoined from using any trade dress on any Farley candy package which is in any way similar to the pouring pitchers image in the Village Design used by Storck

---

6. At hearing on preliminary injunction, Farley's counsel raised an argument in the nature of "unclean hands" asserting that Storck waited too long by bringing this action in January 1992 after first learning of Farley's intended infringe- ment in the beginning of November 1991. Farley's argument has no merit especially in light of the prefiling factual investigation required under Federal Rule of Civil Procedure 11.

as trade dress for its Werther's Original butter toffee candy.