AUTOMATIC LIQUID PACKAGING, INC., Plaintiff,

v.

Jack E. DOMINIK, Defendant–Appellee.

Appeal of Shayle P. FOX and William H. Barrett.

AUTOMATIC LIQUID PACKAGING, INCOPORATED, Plaintiff,

v.

Jack E. DOMINIK, Defendant–Appellant,

v.

Shayle P. FOX and William H. Barrett, Appellees.

Nos. 89–1470, 89–1575.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1990.

Decided Aug. 6, 1990.

---

Shayle P. Fox, Fox & Grove, Debra Riggs–Bonamici, Keck, Mahin & Cate, Chicago, Ill., for Automatic Liquid Packaging, Inc.

Patrick W. O'Brien, Mayer, Brown & Platt, Chicago, Ill., Emery D. Curlee, Morton Grove, Ill., for Jack E. Dominik.

Jonathan Bunge, Keck, Mahin & Cate, Chicago, Ill., for Shayle P. Fox and William H. Barrett.

Shayle P. Fox, Fox & Grove, Chicago, Ill., pro se.

William H. Barrett, Fox & Grove, Chicago, Ill., pro se.

Before CUDAHY, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

These parties are before us a second time. All we have left from a lawsuit filed against attorney Dominik by Automatic Liquid Packaging (ALP), represented by attorneys Fox and Barrett, is an appeal and cross-appeal contesting sanctions. Fox and Barrett appeal the district court's imposition of $1,000 Rule 11 sanctions for filing an amended complaint that contained two frivolous counts. Dominik cross-appeals for an increase in the Rule 11 sanctions, further sanctions based on the other count in the amended complaint, and Rule 38 sanctions for filing a frivolous appeal. We affirm the district court's imposition of sanctions against Fox and Barrett, but decline Dominik's invitation to increase sanctions or impose new ones.

I. Background

The underlying case came before this court two years ago. *Automatic Liquid Packaging, Inc. v. Dominik*, 852 F.2d 1036 (7th Cir.1988). We dismissed ALP's appeal from the district court's grant of summary judgment for Dominik because the district court had not entered final judgment on Dominik's counterclaim. On remand, Fox and Barrett withdrew as ALP's attorneys. ALP with new counsel settled the underlying case with Dominik, who voluntarily dismissed the lawsuit with prejudice. However, Dominik reserved the right to proceed against Fox and Barrett (but not ALP) under Rule 11.

Facts from the underlying case provide the backdrop for the district court's decision to impose sanctions on Fox and Barrett. Judge Posner summarized that case, *id.*, 852 F.2d at 1036:

Before us is the appeal of Automatic Liquid Packaging, Inc., a closely held manufacturing corporation that was incorporated in 1968 with the assistance of its lawyer, Jack Dominik. In exchange for his services Dominik was allowed to buy a substantial block of shares in the new company. He drafted an agreement whereby for ten years any shareholder who either wanted to sell his shares or ceased to be employed by the company would have to offer his shares to the company at a price determined by a formula in the agreement. Dominik, the only shareholder not actually employed by the company, explained to the other shareholders that "termination of employment" (the term used in the agreement) meant "leaving the service of the Company," and that the purpose of the agreement was to ensure that ownership

of the company "would remain with the employees or persons working closely with the Company," i.e., himself.

The company claims that sometime before the agreement was to expire in 1978 —precisely when is a matter of sharp dispute and considerable uncertainty— Dominik ceased to be its lawyer and it asked him to tender his shares to it in accordance with the agreement. He promised that he would do so some time, but he never did, and eventually the company brought this diversity suit, which charges him with breaking the 1968 agreement. It also charges him with committing fraud and violating his fiduciary obligations, the argument here being that Dominik, as the company's lawyer back in 1968, acted unethically in drafting an agreement unduly favorable to himself and later in promising to tender his shares in accordance with the agreement but never doing so. The complaint seeks an order that Dominik tender his shares. He takes the position that the 1968 agreement expired before he ceased to be the company's lawyer and that he never acted unethically in the matter, and has counterclaimed.

The issue before us is whether the district court abused its discretion by granting Dominik's motion for Rule 11 sanctions against Fox and Barrett. We must decide whether the amended complaint signed by Fox and Barrett was "well grounded in fact" pursuant to Rule 11. Assuming we uphold the district court's decision to impose sanctions, the cross-appeal presents the question whether Dominik is entitled to more than $1,000, and whether a third count of the amended complaint also was frivolous and therefore sanctionable. Dominik further asks this court to impose Rule 38 sanctions on Fox and Barrett for filing a frivolous appeal.

## II. Analysis

The amended complaint filed by Fox and Barrett in January of 1987 contained three counts. Count III, the original Count I, alleged that Dominik breached a buy-sell agreement with ALP that required him to allow the company to repurchase all ALP stock he owned. Counts I and II were tort claims. Count I of the amended complaint alleged that Dominik breached fiduciary duties he owed ALP by purchasing stock from his client without taking proper steps to ensure the transaction's fairness, drafting the agreement in a way that favored himself over other shareholders, and failing to allow ALP to repurchase the stock when he left the service of ALP. Count II alleged that Dominik's purchase of ALP stock was fraudulent because he failed to fully explain the terms of the agreement to other shareholders and deliberately avoided his obligations under the agreement. Dominik counterclaimed, seeking an unrestricted stock certificate, and alleging Rule 11 violations and oppression in violation of the Illinois Business Corporation Act.

District Judge Kocoras granted Dominik's motion for summary judgment on all three counts of ALP's amended complaint in October of 1987, and entered final judgment pursuant to Fed.R.Civ.P. 54(b). We then dismissed the appeal for want of jurisdiction because the relationship between the counts on appeal and the counts remaining before the district court prevented application of Rule 54(b). *Automatic Liquid Packaging, Inc. v. Dominik*, 852 F.2d at 1038.

With the appeal pending, the remaining district court counts—Dominik's counterclaims—were transferred to District Judge Conlon. In September of 1988 Fox and Barrett withdrew as counsel for ALP, and Dominik was granted leave to file an amended motion for Rule 11 sanctions. ALP's new attorneys settled the remaining aspects of the case with Dominik, but Dominik reserved the right to seek Rule 11 sanctions against Fox and Barrett.

Judge Conlon on February 8, 1989, granted in part Dominik's motion for Rule 11 sanctions. Judge Conlon held that ALP's contract claim against Dominik "assert[ed] a reasonable interpretation of the facts" and was therefore not sanctionable. However, she accepted Judge Kocoras' conclusion that the inquiry conducted by Fox and Barrett regarding the tort claims "did

not produce any evidence that supports claims of fraud and breach of fiduciary duty," and sanctioned them $1,000. In support of that conclusion she quoted from Judge Kocoras' memorandum opinion and order granting Dominik's summary judgment motion:

> Whatever fiduciary duties Dominik may have had towards ALP, the Court finds no "duplicity and self-favoring" in Dominik's actions.... There is no evidence of self-favoring or deception on the part of Dominik; in fact, he is simply trying to follow the provisions of that agreement.
>
>     \*      \*      \*      \*      \*      \*
>
> The Court cannot find any evidence indicating that Dominik breached any fiduciary duty that he may have had to ALP.

■ Fox and Barrett recognize that the district court retained the authority to sanction them despite dismissal of the underlying case and their withdrawal as attorneys for ALP. *See Cooter & Gell v. Hartmarx Corp.,* — U.S. —, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990); *Wojan v. General Motors Corp.,* 851 F.2d 969, 971–73 (7th Cir.1988). However, they incorrectly argue that this court should use a *de novo* standard to review the district court's decision to impose sanctions. Their brief was filed prior to this court's ruling in *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928 (7th Cir.1989) (en banc), where we concluded that decisions to impose sanctions under Rule 11 were to be reviewed under a deferential abuse of discretion standard. The Supreme Court later embraced this standard in *Cooter & Gell,* 110 S.Ct. at 2461, holding that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination."

The appellants point out an unusual twist to this case—the district court judge who sanctioned them was not the same judge who heard the evidence and granted the motion for summary judgment. Fox and Barrett argue that if a deferential standard of review is based on the district court's "substantial" or "intimate" familiarity with the proceedings, *Frazier v. Cast,* 771 F.2d 259, 262 (7th Cir.1985); *R.K. Harp Invest-*

*ment Corp. v. McQuade,* 825 F.2d 1101, 1103 (7th Cir.1987), that standard should not apply here because Judge Conlon was in essentially the same position as this court in reviewing the record of proceedings held before Judge Kocoras.

This argument fails. Other factors support a deferential standard, even when the district court has no special familiarity with the facts and evidence of a certain case. The Supreme Court's recent discussion of the basis for applying a deferential standard of review to all aspects of a district court's Rule 11 determination, even its legal conclusions, is illuminating:

> Rule 11's policy goals also support an abuse-of-discretion standard. The district court is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence. Deference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them. Such deference will streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court; it will also discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation.

*Cooter & Gell,* 110 S.Ct. at 2460. *See also Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) ("The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility."); *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1428 (7th Cir. 1985), *cert. denied* 475 U.S. 1147, 106 S.Ct. 1801, 90 L.Ed.2d 346 (1986) (rejecting view that appellate courts should substitute their own view of factual findings based on documentary evidence). We therefore apply an abuse of discretion standard to Judge Conlon's decision to sanction Fox and Barrett.

Fox and Barrett contend their tort claims against Dominik were "objectively reasonable," and therefore do not violate Rule 11's prohibition against the filing of pleadings not "well-grounded in fact and ... warranted by existing law ... ".[1] They claim their investigation and legal research uncovered evidence requiring them, consistently with their obligation to their client, to proceed against Dominik in tort. After our deferential review of the evidence, we conclude the district court did not abuse its discretion in sanctioning Fox and Barrett on the two tort counts.

Fox and Barrett argue that Dominik's entry into a business transaction with his clients was subject to close scrutiny and violated the ethical rules for attorney conduct in Illinois. They believe the burden was on Dominik to show that he took proper steps to assure the transaction's fairness.

After the amended complaint was filed they retained an attorney with expertise in ethics to prepare an affidavit supporting their position on Dominik's conflict. That attorney, a "senior partner in a major Chicago law firm" and a professor of Professional Responsibility at Loyola Law School, concluded that Dominik breached his fiduciary duty to his clients and that the sale of stock to Dominik should be rescinded. Fox and Barrett also faced an obvious time problem—the applicable statute of limitations was five years, but the transaction occurred 19 years before suit was filed. They contend the statute of limitations was tolled by Dominik's continued fraudulent conduct.

The merits of the underlying dispute are not so much at issue here as the reasonableness of the inquiry by Fox and Barrett. *See Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1435 (7th Cir.1989). Nevertheless, a short review of those merits reveals the tort claims to be without foundation. Dominik's purchase of 4 percent of stock in a new company at the same price and subject to the same conditions as other shareholders was not presumptively fraudulent. The attorney-client transactions subject to heightened scrutiny are those where the attorney and client have potentially conflicting interests.[2] Here, Dominik's interest was the same as the other shareholders—seeing ALP grow and become more valuable. The district court was correct that ALP brought forth no evidence of Dominik's intent to defraud the other shareholders. Without any evidence of fraudulent conduct by Dominik, there was no way for Fox and Barrett to get around

1. Rule 11 provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

2. See Illinois Code of Professional Responsibility, Rule 5–104(a):

"A lawyer shall not enter into a business transaction with a client *if they have conflicting interests* therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure." (Emphasis added).

the five-year statute of limitations. Judge Kocoras was left with the conviction that ALP's claims were frivolous:

> [I] have some sense that this lawsuit against Mr. Dominik was basically a theory in search of some evidence. I have an instinct and feeling from reviewing the materials presented to me that the company was very unhappy about his stock ownership and was looking for a way to disgorge him of that stock at its own terms, and there really was not a reasonable or plausible basis to do that, and that basically some effort was being made to create some such thing.

It was not improper for Judge Conlon to rely on events occurring before Judge Kocoras which she discovered only by reviewing the record. *See, e.g., Samuels v. Wilder,* 906 F.2d 272, 276 (7th Cir.1990) (Judge Zagel's Rule 11 sanctions based on a review of the record before Judge Marshall upheld under our deferential standard of review). Judge Conlon did not abuse her discretion in sanctioning Fox and Barrett for filing the tort counts.[3]

Dominik's cross-appeal first contends the district court abused its discretion in imposing only a $1,000 sanction on Fox and Barrett. This contention is without merit. From the time Judge Conlon took over the case, she imposed sanctions twice prior to her decision on sanctions against Fox and Barrett—both times against attorneys for Dominik. She considered that fact during her determination of the sanction against Fox and Barrett:

> [D]ominik filed a counterclaim for Rule 11 sanctions not reasonably based in law and therefore generated unnecessary litigation himself. After dismissal of his counterclaim, his first motion for Rule 11 sanctions, signed by an attorney not of record, required the expenditure of time and money by Fox and Barrett in preparing a motion to strike. The history of

this litigation reflects a measure of vindictiveness on the part of all involved.

Dominik cites no authority for the proposition that a district court cannot take into account the questionable behavior of prevailing attorneys when determining the amount of money they are to be awarded under Rule 11. She was also entitled to consider that, while the amended complaint was sanctionable, it was only "marginally frivolous." *Eastway Const. Corp. v. City of New York,* 637 F.Supp. 558, 581 (E.D.N.Y.1986); *see also Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 197 n. 6 (3d Cir.1988), *Colorado Chiropractic Council v. Porter Memorial Hospital,* 650 F.Supp. 231, 243 (D.Colo.1986) ("degree of frivolousness" is a factor to be considered in determining amount of sanctions). Further, Judge Conlon was correct to conclude that Dominik's attorney's conduct could, in her equitable discretion, be considered a "mitigating factor" suggesting a lesser sanction. *See Doering,* 857 F.2d at 195–97. Judge Conlon's decision to impose a $1,000 sanction on Fox and Barrett was not an abuse of discretion.

Dominik also argues that Judge Conlon improperly held that it was a "practical impossibility" to separate the amount of sanctions for the two frivolous claims from the one reasonable claim. We agree that the amount of sanctions can and should be separated based on frivolous vs. non-frivolous claims—assuming that the amount is based on the attorney's fees expended by the prevailing party. One of the cases cited by Judge Conlon recognizes this fact. *See Eastway Const. Corp.,* 637 F.Supp. at 570 (entitled "Allocation of Rule 11 Sanctions By Cause of Action"). In this case, however, Judge Conlon did not purport to base her sanction amount on the fees expended by Dominik in defending the lawsuit, but in her discretion chose an amount for the purpose of deterring frivolous liti-

---

**3.** Fox and Barrett also complain that Judge Conlon did not adequately set forth the basis of her decision to impose sanctions. This court already has stated that it will not require district court judges to "make findings and give explanations every time a party seeks sanctions under Rule 11." *Szabo Food Service, Inc. v. Can-*

*teen Corp.,* 823 F.2d 1073, 1084 (7th Cir.1987). However, when a district court grants a motion for sanctions, it must supply adequate reasons for the award. *Brown, supra,* 830 F.2d at 1438. In this case, Judge Conlon's explanation of the basis for imposing sanctions was adequate given Judge Kocoras' previous findings.

gation. *See Mestayer v. Wisconsin Physicians Service Insurance Corp.*, 905 F.2d 1077, 1080 (7th Cir.1990) ("The court recognized that $250 would not adequately compensate WPS for the costs of litigation, but ruled that deterrence of frivolous litigation, rather than compensation, was the motivating force behind the sanction.").

■ Dominik's second issue on the cross-appeal is whether Fox and Barrett should have been sanctioned for the third count in the amended complaint—breach of contract. Given our deferential standard of review, it is again not necessary to go back through the factual recitation of when each side believes Dominik left the employment of ALP and whether he violated the agreement before the agreement was voided by a legitimate vote of the shareholders. The complexity of the arguments contained in the briefs points out the uncertainty of any resolution to that question. Our previous decision in this case takes note of that fact: "The company claims that sometime before the agreement was to expire in 1978—*precisely when is a matter of sharp dispute and considerable uncertainty*—Dominik ceased to be its lawyer and it asked him to tender his shares to it in accordance with the agreement." *Automatic Liquid Packaging*, 852 F.2d 1036, at 1036 (emphasis added). The district court did not abuse its discretion in concluding—no matter what the final determination would have been on the merits—that the breach of contract claim filed by Fox and Barrett was reasonable and not frivolous under Rule 11.

■ Finally, we agree with the district court, after completing the unpleasant task of reading these briefs and listening to the tone of oral argument, that "the history of this litigation reflects a measure of vindictiveness on the part of all involved." For that reason, although we affirm the district court's imposition of nominal sanctions on Fox and Barrett, we decline to grant Dominik the costs of this appeal pursuant to Fed.R.App.P. 38. Each side shall bear its own costs on appeal, and let us hope that will be the end of it.

For all of the foregoing reasons, the judgment of the district court is, in all respects,

AFFIRMED.