**DORR–OLIVER INCORPORATED,**
Plaintiff,

v.

**FLUID–QUIP, INC., Andrew Franko
and Pic Tek, Inc., Defendants.**

No. 93 C 842.

United States District Court,
N.D. Illinois, E.D.

Oct. 4, 1993.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff Dorr–Oliver Inc. ("Dorr–Oliver") sues defendants Fluid–Quip, Inc. ("Fluid–Quip"), Andrew Franko ("Franko") and Pic Tek, Inc. ("Pic Tek") (collectively "defendants") for trade dress and trademark infringement. Defendants move for summary judgment and partial summary judgment. Dorr–Oliver moves (1) to reopen discovery relating to the advice of counsel defendants rely upon in their motion for partial summary judgment; and (2) to extend its time to respond to defendants' summary judgment motions.

### BACKGROUND

Dorr–Oliver and Fluid–Quip both sell equipment that separates starch from gluten ("starch washing equipment") to the corn wet milling industry. Franko is president and chief executive officer of Fluid–Quip. Pic Tek is a manufacturer's representative of Fluid–Quip products. Dorr–Oliver alleges that it has enforceable trademark rights in the word "clamshell" for its DorrClone Type C multicyclone starch washing equipment and enforceable trademark/trade dress rights in the outer housing configuration of this equipment. Complaint ¶ 6. Dorr–Oliver claims that Fluid–Quip manufactured multicyclone starch washing equipment with an outer housing identical to Dorr–Oliver's DorrClone Type C multicyclone starch washing equipment and that Fluid–Quip used the word "clamshell" to describe and promote this equipment. Complaint ¶¶ 22–23. Dorr–Oliver alleges that defendants have (1) infringed its trademark and trade dress rights in violation of the Lanham Act, 15 U.S.C. ¶ 1125(a) (1993); (2) engaged in common law unfair competition, false advertising and misappropriation; (3) violated the Illinois State Counterfeit Trademark Act, 765 ILCS ¶ 1040/0.01 *et seq.* (1992); (4) diluted its trademark rights under Illinois law, 765 ILCS ¶ 1035/15 (1992); (5) violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS ¶ 510 *et seq.* (1992); and (6) violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS ¶ 505 *et seq.* (1992 and 1993 Supp.).

Defendants moved for partial summary judgment precluding Dorr–Oliver from obtaining monetary relief and for summary judgment on August 26, 1993. Before responding to defendants' summary judgment motions, Dorr–Oliver moved (1) to reopen

discovery relating to the advice of counsel defendants rely upon in their motion for partial summary judgment; and (2) to extend its time to respond to defendants' summary judgment motions. Dorr–Oliver contends that defendants have invoked the attorney-client privilege to block discovery of advice defendants sought relating to their alleged infringement of Dorr–Oliver's trademark and trade dress rights. Plaintiff's Mot. at 1. Dorr–Oliver further contends that defendants have waived their attorney-client privilege by relying on a request for legal advice in their motion for partial summary judgment. *Id.*

### DISCUSSION

#### 1. Dorr–Oliver's Motion To Reopen Discovery

In support of their motion for partial summary judgment, defendants argue that their good faith precludes any monetary award to Dorr–Oliver under equitable accounting principles. Defendants' Partial Summary Judgment Mot. at 3. Defendants explain that in order for Dorr–Oliver to prevail under traditional equitable accounting theories, defendants must have acted egregiously or deliberately. *Id.* at 3–4. Defendants argue that their good faith precludes a finding of egregious or deliberate infringement and state that this good faith is "further demonstrated by Mr. Franko's prudent conduct, prior to manufacturing Fluid–Quip's clamshells, in seeking opinion from counsel." *Id.* at 5.

Throughout discovery, defendants blocked Dorr–Oliver's attempts to learn the content of discussions between Franko and counsel, claiming attorney-client privilege. Plaintiff's Mot., Exh. A, Franko's Dep.; Exh. B, defendants' responses to Dorr–Oliver's interrogatories; Exhs. C & D, Dorr–Oliver's document request and defendants' written response. Dorr–Oliver claims that defendants' use of the attorney-client privilege as a sword to buttress a good faith argument waives defendants' ability to use the attorney-client privilege as a shield to protect them from discovery requests and deposition questions. *Id.* at 4. Thus, Dorr–Oliver argues that defendants must reveal the previously undisclosed purportedly privileged information because de-

fendants have waived their attorney-client privilege. Dorr–Oliver explains that discovery is necessary to show the nature of advice defendants received, whether it was the type of advice on which defendants could have reasonably relied, and whether defendants followed counsel's advice. *Id.* at 6.

Defendants counter that they "are not asserting or relying on the *content* of the legal opinion or any advice obtained by Mr. Franko." Defendants' Resp. at 2 (emphasis in original). Defendants argue that Dorr–Oliver's motion is simply "a thinly veiled, eleventh-hour attempt to enlarge the time needed to respond to Defendants' motions for summary judgment." *Id.* at 3. Defendants argue that they should not be required to divulge their communications with counsel because: (1) they have not waived the attorney/client privilege since they have not disclosed a privileged communication; (2) disclosure that a client retains counsel is not a waiver of the attorney/client privilege; (3) Dorr–Oliver, not defendants, has put defendants' good faith in issue; and (4) further discovery and extensions of time are unnecessary and prejudicial to defendants. *Id.* at 3–4.

■ This Circuit has adopted the general principles of attorney-client privilege articulated by Wigmore:

(1) Where legal advice of any kind is sought

(2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. 8 Wigmore ¶ 2292.

*See, e.g., United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983). The question here is whether the protection has been waived. Defendants, not Dorr–Oliver, injected their good faith reliance on the opinion of their counsel into this case in their motion for partial summary judgment. *See Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095, 1098 (7th Cir.1987).

Defendants cannot have it both ways; they cannot seek refuge in consultation with counsel as evidence of their good faith yet prevent Dorr–Oliver from discovering the contents of the communication. Two recent patent infringement cases specifically held that a party relying on advice of counsel to show that it is not guilty of willful infringement cannot prevent discovery of the relevant communications between itself and counsel. *Keyes Fibre Co. v. Packaging Corp. of America*, 763 F.Supp. 374, 376 (N.D.Ill.1991); *Amsted Industries Inc. v. National Castings, Inc.*, 1990 WL 106548, at \* 4–6 (N.D.Ill. July 11, 1990). In *Keyes*, Keyes Fibre Company ("Keyes") alleged that Packaging Corporation of America ("PCA") willfully infringed Keyes' patent for a particular type of polymer-coated food container. Keyes moved to compel discovery of relevant legal advice given to PCA because Keyes was concerned that PCA would seek to prove its good faith by showing that its conduct conformed with counsel's advice. The court granted the motion to compel, explaining:

> Privilege or no privilege, if PCA intends to use such information at trial, Keyes is entitled to full disclosure in order to prepare its case. Keyes has every right to obtain information relevant to PCA's defense. Of course, PCA cannot be compelled to waive the attorney-client privilege. If, however, PCA chooses to stand behind the privilege and not permit discovery, then PCA cannot introduce the opinions or testimony of counsel to show that it is not guilty of willful infringement.... PCA must either waive the attorney-client privilege and comply with Keyes' discovery request or assure the court and opposing counsel that it will not pursue a defense based on the information covered by the privilege.

*Keyes Fibre Co.*, 763 F.Supp. at 376 (citation omitted). Similarly, in *Amsted*, Amsted Industries Incorporated ("Amsted") alleged that National Castings, Inc. ("National Castings") willfully infringed Amsted's patent for a particular part of the underframe of railway freight cars. National Castings asserted that any infringement was not willful because it acted in good faith reliance upon the opinion of counsel, whose opinion letters it sought to introduce. Amsted contended that National Castings withheld material information from the attorney, so the opinion letters did not support a good faith defense. Amsted sought leave to call the attorney as a witness to examine him as to the basis for the opinion letters. The court granted the motion to compel the attorney to testify, explaining: "By invoking the good faith defense, National [Castings] has placed in issue the circumstances of [the attorney's] opinion letter and waived the attorney-client privilege which otherwise would have cloaked the communications between National [Castings] and [its attorney]." *Amsted Industries, Inc*, 1990 WL 106548, at \*6 (citations omitted).

Defendants seek to distinguish this case from the two decisions discussed above, claiming that they are not asserting or relying on the content of any legal opinion; they are simply invoking the fact of their consultation with counsel as one aspect of their prudent conduct in building their good faith defense to willful infringement. Defendants' claim defies logic. Defendants clearly state that part of their good faith was seeking advice of counsel. Merely asking a lawyer a question is not in itself probative evidence of good faith. Whether or not defendants acted in good faith depends on what legal advice they received and whether they followed that legal advice.

Thus, defendants must have disclosed the advice of counsel or they are precluded from raising the fact of legal consultation as part of their good faith argument. Franko asserted the attorney-client privilege at his deposition on June 30, 1993. Discovery closed on August 20, 1993. Yet, Dorr–Oliver did not file this motion to reopen discovery until September 15th. Due to Dorr–Oliver's lack of diligence, its motion to reopen discovery is denied. Instead, defendants are precluded from relying on undisclosed advice of counsel as part of their good faith argument in their motion for partial summary judgment.

**2. Dorr–Oliver's Motion For An Extension Of Time To Respond To Defendants' Motions For Summary Judgment**

Dorr–Oliver has responded to defendants' motions for summary judgment in accor-

dance with this court's schedule. Accordingly, Dorr–Oliver's motion to extend time is moot.

### 3. Defendants' Motion For Partial Summary Judgment

■ A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1388 (7th Cir. 1993). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, this court must consider all evidence in the light most favorable to the nonmoving party. *Biddle v. Martin*, 992 F.2d 673, 675 (7th Cir.1993). However, the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Hickey*, 995 F.2d at 1388. Where the nonmovant fails to make a sufficient showing on an essential element of his case, on which he would bear the burden of proof at trial, summary judgment is proper. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

Defendants move for partial summary judgment precluding Dorr–Oliver from obtaining monetary relief under the Lanham Act because (1) there is no actual confusion and (2) defendants acted in good faith. In addition, defendants assert that Dorr–Oliver is not entitled to any monetary relief on its state law claims.

■ Both of defendants' arguments to preclude monetary relief under the Lanham Act misstate the applicable law. First, Dorr–Oliver need not prove actual confusion to be entitled to monetary relief. To prove that defendants violated the Lanham Act, Dorr–Oliver must show that (1) defendants used a false designation of origin or false description or representation that their clamshells were in fact Dorr–Oliver's; (2) defendants caused these illegitimate clamshells to enter into interstate commerce; and (3) that Dorr–Oliver believes it is likely to be damaged as a result. 15 U.S.C. ¶ 1125(a); *Web Printing Controls Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir.1990). Once a violation is established, the Lanham Act authorizes a variety of remedies. Dorr–Oliver must prove actual confusion in order to recover damages for loss of sales, profits, or goodwill. *Web Printing Controls Co.*, 906 F.2d at 1204–05. However, Dorr–Oliver may still recover monetary relief if it is unable to prove actual damages. Courts may fashion wide-ranging relief for a Lanham Act violation, "allowing remedies such as a recovery of defendant's profits, an award of costs of the action, and, in some exceptional cases, an award of attorney's fees." *Id.* at 1205. Rather than flowing from Dorr–Oliver's proof of its injury or damage, alternative remedies may flow from Dorr–Oliver's proof of defendants' unjust enrichment, the need for deterrence or, in the case of costs, merely from proof of defendants' Lanham Act violations. *Id.; see also Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 941 (7th Cir.1989), *cert. denied*, 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990).

■ Second, Dorr–Oliver may recover damages even if defendants acted in good faith. Defendants point to *Banff, Ltd. v. Colberts, Inc.*, 996 F.2d 33 (2d Cir.1993) and *The Film Group, Inc. v. The Film Group, Inc.*, 193 U.S.P.Q. (BNA) 616, 1976 WL 21062 (N.D.Ill. June 29, 1976), to buttress their argument that an accounting of profits is available only when there is willful or deliberate infringement. However, defendants' reliance on these two cases is misplaced. The Seventh Circuit has expressly declined to adopt a rule that egregious or intentional conduct is necessary to warrant an accounting of profits. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). To the contrary, the Seventh Circuit has held that:

The Lanham Act specifically provides for the awarding of profits in the discretion of the judge subject only to principles of equity. As stated by this Court, "The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." Other than general equitable considerations, there is no express requirement that the parties be in direct competition or that the infringer wilfully infringe the trade dress to justify an award of profits. Profits are awarded under different rationales including unjust enrichment, deterrence, and compensation. *Sands*, 978 F.2d at 961 (citations omitted). *Sands* is the law in this Circuit. This court is bound by *Sands* rather than by a Second Circuit decision on the same issue, even one that is more recent than *Sands*.

█ Accordingly, defendants' flat claim that Dorr–Oliver is not entitled to any monetary relief under the Lanham Act is simply incorrect. Dorr–Oliver may be awarded profits if defendants intentionally imitated Dorr–Oliver's clamshell design. *See Roulo*, 886 F.2d at 941. Dorr–Oliver may be awarded attorney's fees if defendants imitated its clamshell design in bad faith. *See Sands*, 978 F.2d at 963. Even if any infringement was innocent, defendants may be liable. *See, e.g., General Electric v. Speicher*, 877 F.2d 531, 536 (7th Cir.1989); *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588–89 (7th Cir.1989).

Defendants' argument that Dorr–Oliver is not entitled to monetary relief on its state law claims also fails. Counts II through VI of Dorr–Oliver's complaint allege defendants' violation of Illinois common and statutory law. Dorr–Oliver cannot recover damages under each particular claim, but defendants overreach when they argue that Dorr–Oliver cannot obtain monetary relief at all under state law.

█ Defendants assert that Dorr–Oliver is not entitled to monetary relief under the Illinois Counterfeit Trademark Act (Count III) because Dorr–Oliver's alleged trademark properties are not registered. However, trademark registration is not required for coverage under this act. *Soft Sheen Products, Inc. v. Revlon, Inc.*, 675 F.Supp. 408, 416 (N.D.Ill.1987). Furthermore, monetary damages are available under the Illinois Counterfeit Trademark Act. 765 ILCS ¶ 1040/7 (1992).

█ The Illinois Consumer Fraud and Deceptive Business Practices Act (Count VI) allows damages as well as injunctive relief. 815 ILCS ¶¶ 505/7, 505/10a (1992 and 1993 Supp.); *see, e.g., Pain Prevention Lab*, 657 F.Supp. at 1493. Contrary to defendants' contention, defendants' good or bad faith is irrelevant under the Consumer Fraud and Deceptive Business Practices Act; recovery is possible even for innocent misrepresentations. *Harkala v. Wildwood Realty, Inc.*, 200 Ill.App.3d 447, 146 Ill.Dec. 232, 236, 558 N.E.2d 195, 199 (1990). Attorney's fees may also be awarded. *Ekl v. Knecht*, 223 Ill. App.3d 234, 165 Ill.Dec. 760, 769, 585 N.E.2d 156, 165 (1991). Finally, Dorr–Oliver may bring a claim under this act. *P.I.A. Michigan City, Inc. v. Nat'l Porges Radiator Corp.*, 789 F.Supp. 1421, 1427 (N.D.Ill.1992) (standing under Consumer Fraud and Deceptive Business Practices Act is not limited to consumers; any person damaged by a violation of the act may sue).

█ Only injunctive relief is available under the Illinois Trademark Registration Act (Count IV). 765 ILCS ¶ 1035/15 (1992). However, courts have noted that monetary relief is not granted under this act specifically because it is available elsewhere. *Berghoff Restaurant Co., Inc. v. Lewis W. Berghoff, Inc.*, 499 F.2d 1183, 1185 (7th Cir.1974). Similarly, the Uniform Deceptive Trade Practices Act (Count V) provides only for injunctive relief but allows costs and attorneys fees if defendants willfully engaged in a deceptive trade practice. 815 ILCS ¶ 510/3 (1992); *see, e.g., Bingham v. Inter–Track Partners*, 234 Ill.App.3d 615, 175 Ill.Dec. 447, 451, 600 N.E.2d 70, 74 (1992); *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F.Supp. 1486, 1493 (N.D.Ill.1987). In addition, the Consumer Fraud and Deceptive Business Practices Act authorizes recovery of damages from violations of the Uniform Deceptive Trade Practices Act. *Duncavage v. Allen*, 147 Ill.App.3d 88, 100 Ill. Dec. 455, 462–63, 497 N.E.2d 433, 440–41

(1986), *appeal denied*, 113 Ill.2d 573, 106 Ill.Dec. 46, 505 N.E.2d 352 (1987).

Defendants contend that Dorr–Oliver is not entitled to monetary damages for defendants' alleged violations of Illinois common law unfair competition, false advertising and misappropriation (Count II). Defendants recite that no monetary damages may be awarded for unfair competition absent proof of fraud or palming off. *See Champion Plug Co. v. Sanders*, 331 U.S. 125, 130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947) (upholding a lower court's remedy of an injunction rather than an accounting of profits because there was no fraud or palming off); *Consumers Petroleum Co. v. Consumers Co. of Illinois*, 169 F.2d 153, 163–64 (7th Cir.1948), *cert. denied*, 335 U.S. 902, 69 S.Ct. 406, 93 L.Ed. 437 (1949) (denying monetary award because "nothing in defendant's conduct ... demonstrates a lack of honesty or good faith"). In response, Dorr–Oliver argues that monetary damages may be awarded without fraud or palming off, citing *Lady Esther, Ltd. v. Lady Esther Corset Shoppe, Inc.*, 317 Ill.App. 451, 46 N.E.2d 165 (1943), a case which in fact states that an *injunction* may be granted even when there is no fraud or palming off. In addition, Dorr–Oliver contends that defendants did palm off its clamshell trademark and trade dress.

Further inquiry into whether monetary relief may be possible under the common law claims is unnecessary. Monetary relief is only one of the remedies Dorr–Oliver seeks. Whether any particular state claim gives rise to monetary relief is not dispositive since monetary relief is clearly allowed by state law as a whole. In fact, the Illinois General Assembly intended the Consumer Fraud and Deceptive Business Practices Act to be broader than common law fraud. *Totz v. Continental Du Page Acura*, 236 Ill.App.3d 891, 177 Ill.Dec. 202, 208, 602 N.E.2d 1374, 1380 (1992). Defendants' motion for partial summary judgment is denied.

### 4. Defendants' Motion For Summary Judgment

Dorr–Oliver's entire case rests on its alleged valid trade dress and trademark rights in the outer housing configuration of its DorrClone Type C multicyclone starch washing equipment and the word "clamshell" used by Dorr–Oliver in connection with this equipment. Defendants move for summary judgment based on their assertion that Dorr–Oliver lacks enforceable rights in both the configuration of its starch washing equipment and the word "clamshell."

■ "Trade dress refers to the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Roulo*, 886 F.2d at 935 (citations omitted). In order to prove trade dress infringement, Dorr–Oliver must establish that (1) its trade dress is inherently distinctive or has acquired secondary meaning; (2) the similarity of defendants' trade dress to Dorr–Oliver's creates a likelihood of confusion on the part of consumers; and (3) its trade dress is non-functional, meaning that such features are not common to all products in the industry and are therefore unnecessary for effective competition. *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1067–68 (7th Cir.1992), citing *Roulo*, 886 F.2d at 935; *North American Bear Co., Inc. v. Carson Pirie Scott & Co.*, 1991 WL 259031, at * 6 (N.D.Ill. Nov. 27, 1991). The third element, functionality, is actually an affirmative defense on which defendants bear the burden of proof. *Computer Care*, 982 F.2d at 1068; *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 20 (7th Cir.1992).

■ Defendants' arguments are limited to the inherently distinctive/secondary meaning and functionality prongs of the test.[1] On the second prong, defendants argue that the shape of the clamshell is functional and therefore not protectible. Defendants argue that the clamshell shape of its starch washing equipment is functional because customers insisted on the clamshell shape so that defendants' equipment would be interchangeable with the DorrClone Type C. Defendants

---

1. Defendants state that it is unnecessary to address the likelihood of confusion prong because Dorr–Oliver meets neither of the other two.

explain that functionality is determined by the effective competition standard, *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1188 (7th Cir.1989), and that in order for defendants to compete effectively, their starch washing equipment needed to be interchangeable with Dorr–Oliver's.

■ Defendants' attempt to blame its possible trade dress infringement on customer demand must fail. A manufacturer cannot copy a competitor's product simply because customers prefer the competitor's product. If copying were permissible on this basis, protectible rights in trademarks and trade dress would be meaningless.

■ Functionality involves more than customer demand. As the Seventh Circuit has explained:

A trade dress feature is "functional," and therefore not protectable, if it is one which competitors would have to spend money not to copy but to design around. It is something costly to do without (like the hood of a car), rather than costly to have (like the statue of Mercury on the hood of a Rolls Royce). Put another way, a functional feature is one that would be found in most or all brands of the product even if no producer had any desire to have his brand mistaken for that of another producer. It is a feature, such as the oval shape of a football, that competitors would find necessary to incorporate into their product in order to be able to compete effectively.

*Computer Care*, 982 F.2d at 1071 (citations omitted); *see also W.T. Rogers Co., Inc. v. Keene*, 778 F.2d 334 (7th Cir.1985). Dorr–Oliver advances uncontroverted evidence that not all starch washing equipment made by manufacturers other than defendants resembles the DorrClone Type C. Plaintiff's Resp to Mot. for Summary Judgment, Exh. I, design alternatives report by Ronald B. Johnson, S.E., P.E. In addition, Dorr–Oliver explains that its TM and RC lines of starch washing equipment have different outer housing configurations and outsell the DorrClone Type C. *Id.*, Exh. R, declaration of Thomas H. Bier and photographs of Dorr–Oliver's TM and RC starch washing equip-

ment. Dorr–Oliver also explains that certain features of the DorrClone Type C are rather expensive and unnecessary: the center bolt and the ribbed access hatch. *Id.*, Exh. U, declaration of Charles J. Bates, PhD., at ¶ 8. Evidence of the existence of competitive trade dress shows nonfunctionality. *See, e.g., Schwinn*, 870 F.2d at 1191; *Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1123–24 (7th Cir.1988); *Vaughan Mfg. Co. v. Brikam Int'l, Inc.*, 814 F.2d 346, 350–51 (7th Cir. 1987); *Eldon Indus., Inc. v. Rubbermaid, Inc.*, 735 F.Supp. 786, 821–22 (N.D.Ill.1990). Viewing Dorr–Oliver's uncontroverted assertions and evidence as true, Dorr–Oliver has shown that there is a genuine issue whether the trade dress of the DorrClone Type C is functional. Thus, it is unnecessary to reach the other prongs of the trade dress infringement test. Defendants are not entitled to summary judgment on the trade dress issue.

■ Defendants also contend that Dorr–Oliver has no enforceable rights in the word "clamshell." In order to prove a claim of trademark infringement, Dorr–Oliver must show that (1) its trademark is protected and (2) the relevant group of buyers is likely to confuse defendants' starch washing equipment with Dorr–Oliver's. *Forum Corp. of North Am. v. Forum, Ltd.*, 903 F.2d 434, 439 (7th Cir.1990), citing *Int'l Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988). Defendants argue that the word "clamshell" is generic and thus not entitled to protection. *See Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 935–36 (7th Cir.1986) ("A generic or common descriptive term can never function as a trademark.... Unlike a trademark, which identifies the course of a product, a generic term merely specifies the genus of which the particular product is a species"). Dorr–Oliver argues that clamshell is not generic and is entitled to protection.

■ The Lanham Act was amended in 1984 to reflect the primary significance test. Trademark Clarification Act of 1984, Pub.L. No. 98–620, Title I, ¶ 102, 98 Stat. 3335 (1984) (codified at 15 U.S.C. ¶ 1064). Under the primary significance test, a mark is not generic if the consuming public perceives the mark as an indication of source. *Berner Int'l*

Corp. v. Mars Sales Co., 987 F.2d 975, 980 (3d Cir.1993). The proper inquiry is not whether clamshell is a commonly used word but whether clamshell refers to Dorr–Oliver's starch washing equipment in the minds of the relevant consuming public, i.e., purchasers or potential purchasers of starch washing equipment. Thus, defendants' reliance on the dictionary definition of clamshell and the use of the word in describing other products is misplaced. Defendants' Summary Judgment Mot., Exhs. 25–32. The use of clamshell in describing steam shovel jaws is simply irrelevant here. See Id., Exh. 26.

■ The parties disagree whether the corn wet milling industry, the relevant consuming public, utilizes the term generically or to refer specifically to Dorr–Oliver's equipment. Dorr–Oliver has used the term "clamshell" since 1956; it presents evidence that in the corn wet milling industry, the term "clamshell" referred only to Dorr–Oliver equipment until defendants made equipment using the same term. Plaintiff's Summary Judgment Resp., Exh. P, Randall Kampfe Dep. at 28, 49; Exh. T, declaration of Charles J. Bates, PhD. at ¶ 5; Exh. J, Allan Johnson Dep. at 49. Defendants counter with evidence that the term is used universally to refer to starch washing equipment made by other companies as well as by Dorr–Oliver. Defendants' Summary Judgment Mot., Exh. 4, Allan Johnson Dep. at 32, 34, 49; Exh. 7, Theresa Jenkins Dep. at 26; Exh. 8, Thomas Tiemeyer Dep. at 21; Exh. 9, Terry L. Nayes Dep. at 56. A genuine factual issue emerges from the reams of paper submitted by each side. For example, Allan Johnson states that the term "clamshell" is used universally, but he also states that the term is used to refer to equipment that had "the same general appearance as the existing Dorr–Oliver equipment that we've historically called clamshells." Id., Exh. 4 at 32, 49. In addition, Theresa Jenkins, Thomas Tiemeyer and Terry Nayes all work for defendants Fluid–Quip or Pic Tek. Id., Exh. 7 at 4; Exh. 8 at 4; Exh. 9 at 5. In contrast, Dorr–Oliver relies on comments made by consumers rather than by its own employees: Randall Kampfe is general manager at ADM Corn Processing, Charles Bates recently retired as a vice president of American Maize–Products Company, and Allan Johnson works for Cargill. Plaintiff's Summary Judgment Resp., Exh. P at 3; Exh. T at ¶ 3; Exh. J at 3. Viewed in the light most favorable to Dorr–Oliver, whether clamshell is a generic term is a genuine issue. Since this is a material fact in a trademark infringement case, defendants' motion for summary judgment on the trademark issue must be denied.

**5. Dorr–Oliver's Request For Rule 11 sanctions**

■ Dorr–Oliver requests imposition of Rule 11 sanctions on defendants for that portion of their motion for partial summary judgment in which defendants contend that their good faith precludes Dorr–Oliver from recovering damages. Fed.R.Civ.P. 11 requires that, to the best of the signer's knowledge, motions are well grounded in fact and warranted by existing law or a good faith argument for changing existing law. The court notes that defendants appear to intentionally disregard controlling Seventh Circuit precedent (Sands ) in arguing that their good faith precludes awarding Dorr–Oliver monetary relief under the Lanham Act. At best, defendants make a subtle argument to modify existing law to follow the Second Circuit. In turn, Dorr–Oliver misstates a case in its response to defendants' motion for partial summary judgment, claiming that Lady Esther stands for a broader proposition than the case does. Imposing Rule 11 sanctions on defendants would be inappropriate here, since both sides have arguably offended the rule. See Myatt v. City of Chicago, 1991 WL 148161, at *1 (N.D.Ill. July 25, 1991); Phaup v. Pepsi–Cola General Bottlers, Inc., 761 F.Supp. 555, 572 n. 5 (N.D.Ill.1991); cf. Automatic Liquid Packaging, Inc. v. Dominik, 909 F.2d 1001, 1006 (7th Cir.1990) (noting that a district court is entitled to take into account the questionable behavior of the prevailing attorneys when imposing Rule 11 sanctions against the losing attorneys).

## CONCLUSION

Defendants' motions for partial summary judgment and summary judgment are de-

nied. Dorr–Oliver's motion to reopen discovery relating to the advice of defendants' counsel is denied. Dorr–Oliver's motion for an extension of time to oppose defendants' motions for summary judgment is moot.