A92A2111. WRIGHT et al. v. TIDMORE et al.
(430 SE2d 72)

BLACKBURN, Judge.

In 1980 appellant Thomas H. Wright, Jr. on behalf of his professional corporations (Thomas H. Wright, Jr., Architect, P.C. and Wright and Mitchell, Architects, P.C.) entered into a contract with appellees Thomas L. Tidmore and Marian A. Tidmore to design and draft plans for the construction of a 24-unit apartment complex in Helen, Georgia. The Tidmores apprised Wright that they wanted the apartments to be built in compliance with any codes or regulations for condominiums so they could be sold as condominium units at any time in the future. The document signed by the parties was the standard agreement form issued by the American Institute of Architects.

Article 8.1 of the contract provided that the drawings and specifications of the buildings were to remain the property of the architect whether or not the project for which they were made was executed; but that the owner "shall be permitted to retain copies, including reproducible copies, of Drawings and Specifications for information and reference in connection with the Owner's use and occupancy of the Project. The Drawings and Specifications shall not be used by the Owner on other projects, for additions to this Project or for completion of this Project by others provided the Architect is not in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect." Article 8.2 further provided that "[s]ubmission or distribution to meet official regulatory requirements or for other purposes in connection with the Project is not to be construed as publication in derogation of the Architect's rights."

The flat fee due under the contract for the drawings and specifications was paid in full and three of the four buildings in the plans (18 units) were constructed. In 1984 the Tidmores retained the appellants to make some revisions in the floor plans, and this fee was also paid.

In 1990 the Tidmores took legal steps to convert the apartments into condominiums. No structural changes of any kind were made in the buildings, but documents were required by OCGA § 44-3-83 (b) (1) to be filed describing the layout of the units and certified by an architect. Those documents included, inter alia, plans prepared, signed, and sealed by a registered architect regarding every structure, and a certification by the architect that he has viewed the property and that the structures were built in accordance with the plans. Without obtaining the consent of the appellants, the Tidmores hired ap-

pellee David Hewell as an architect to prepare the plats and plans in accordance with OCGA § 44-3-83 for recording.

Hewell inspected the property and utilized the Tidmores' copies of the appellants' plans for this purpose. In doing so, he changed the word "apartments" to "condominiums," redated the documents to conform to the date of the certification, identified the buildings by number instead of letter and added a designation for each individual condominium unit, and combined two sets of plans into one. He removed Wright's seal from the documents, but retained Wright's name and designated him as the design architect on the documents. In compliance with OCGA § 44-3-83 (b), Hewell placed his own seal on the documents beside his certification that the buildings were constructed in accordance with the appellants' plans, and that there were no significant changes between the project as built and the design plans. Hewell did not keep the blueprints or use them for any other purpose.

The appellants brought the instant action against the Tidmores individually and as Tidmore Properties, Hewell, and the incorporated condominium association. They contended that the filing of the altered plans with the clerk of the superior court as a part of the condominium declaration was a publication in violation of the contract. They further alleged that the plans were published a second time when they were included in sales brochures and distributed to the general public as prospective condominium purchasers. There was no allegation of any additional construction work, additions to the original project or the building of any structures based on these plans. The appellants sought to recover nominal and compensatory damages, and punitive damages in an amount not less than $5,000,000 plus attorney fees and expenses of litigation for the wilful, malicious and intentional misappropriation and conversion of their intellectual property and proprietary rights by the appellees to their own use and purposes outside the scope, permission and provisions of the agreement. This appeal is from the grant of summary judgment to the appellees based upon these undisputed facts.

The appellants claim that the appellees misappropriated their intellectual property consisting of the plans for the apartment complex built by the Tidmores. As a legal basis for their cause of action, the appellants refer to *Cartin v. Boles*, 155 Ga. App. 248 (270 SE2d 799) (1980), involving an author's common-law property right in an unpublished manuscript and redress against anyone who endeavors to profit by its publication through plagiarism, and *Wilson v. Barton & Ludwig, Inc.*, 163 Ga. App. 721 (296 SE2d 74) (1982), involving the wrongful appropriation of an abstract idea. In *Monumental Properties v. Frontier Disposal*, 159 Ga. App. 35, 37 (282 SE2d 660) (1981), this court found no authority for a "common law copyright" in this state, but noted that "[o]ur courts have long recognized that an au-

thor or inventor has a property right in the product of his mental labors. . . ." Regardless of how the appellants' cause of action may be fashioned, we find that the trial court properly granted summary judgment for all the appellees because there was no misappropriation of the appellants' plans.

It was uncontroverted that at the inception of the project in 1980, the appellants were aware of the Tidmores' intention of converting the apartment complex into a condominium at some time in the future. Under the express terms of the contract between the appellants and the Tidmores, the Tidmores were authorized to retain copies of the architectural plans for "information and reference" in connection with their use of the project, and the submission of those plans to meet "official regulatory requirements or for other purposes in connection with the project" did not violate the appellants' rights with respect to the plans.

In connection with the eventual conversion of the apartment complex into a condominium complex, OCGA § 44-3-83 (b) required submission of the plans of the structures prepared, signed, and sealed by a registered architect, and a certification by the architect that he had viewed the property and that the structures were constructed in accordance with the plans. This subsequent use of the plans by the Tidmores was authorized by the terms of their contract with the appellants, and may not be regarded as a misappropriation. Similarly, inasmuch as OCGA § 44-3-111 (b) requires that any seller of a condominium furnish prospective buyers with various documents, including a copy of the floor plan of the unit and a copy of the condominium declaration, any use of the plans for that purpose also was authorized under the contract, and did not constitute a misappropriation.

With regard to Hewell's use of the appellants' architectural plans, it is clear that his adaptation of the plans in order to satisfy the requirements of OCGA § 44-3-83 (b) were minimal, and in no way plagiarized the appellants' mental labors. Specifically, Hewell redated the plans only so that they conformed to the date of his certification that he had viewed the property and that the structures were built according to the plans. He identified the buildings by number instead of letter, and added a designation for each condominium unit. Because the apartment complex had been built in two phases, he combined two sets of plans into one for convenience. These changes were made solely for the purpose of complying with OCGA § 44-3-83 (b).

Hewell did remove Wright's seal from the documents, but he retained Wright's name on all the plans as the design architect, so that Wright would be credited with the design of the project. Hewell's own seal was used only in conjunction with his certification regarding the conformity of the building construction to the plans.

In summary, Hewell did not claim the plans to be his own, but

instead made it clear that Wright was the design architect. Hewell did not sell the plans, and he did not build a project from the appellants' plans. His adaptation of the plans was consistent with the Tidmores' use of the plans authorized under the contract between the Tidmores and the appellants, and was necessary for compliance with OCGA § 44-3-83 (b).

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-22-56 (c). . . . If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). In the instant case, the appellees negated the existence of any factual issue regarding the most essential element of the appellants' claim, viz., misappropriation. For that reason, the trial court properly granted summary judgment for all the appellees.

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED MARCH 9, 1993 —
RECONSIDERATION DENIED MARCH 24, 1993.

*Federal, Goetz & Cronkright, Charles M. Goetz, Jr., Julie A. Goodwin*, for appellants.

*Bauer, Deitch & Raines, Gilbert H. Deitch, George R. Ference*, for appellees.