**Michael R. EIBEN, Plaintiff,**

v.

**A. EPSTEIN & SONS INTERNATIONAL, INC., et al., Defendants.**

**No. 97 C 8448.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 26, 1999.

---

608

David A. Crossman of Gilhooly & Crossman, Ltd., Chicago, IL, for plaintiff.

F. John McGinnis and Dawn M. Phillips of Altheimer & Gray, Chicago, IL, for A. Epstein & Sons International, Inc.

Steven G.M. Stein and Phillip A. Bock of Stein, Ray & Conway, Chicago, IL, for Ellerbe Becket.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Architect Michael Eiben ("Eiben") has sued A. Epstein & Sons International, Inc. ("Epstein") and Ellerbe Becket ("Ellerbe," also a corporation despite the absence of any corporate indicia in its name) for copyright infringement.[1] Eiben charges that each of them violated the copyright laws by impermissibly photocopying and using architectural plans previously drafted by Eiben.

With the Final Pretrial Order ("FPTO") having been entered in anticipation of trial, both Epstein and Ellerbe have raised evidentiary objections that require in limine disposition. This Court has denied Eiben's motion to strike several of those motions in limine, directing Eiben to respond. With full briefing having now been provided, the motions can be addressed in turn.[2]

### Background

Because the pending motions go to the heart of the legal questions in this case—indeed, they might have been raised in summary judgment format—this opinion first briefly recounts the essential facts of the case. Most of what follows is taken from the uncontested facts provided by the parties in the FPTO.

In 1983 Cook County hired Eiben as an architect (under the "County–Eiben Contract"[3]) to develop plans for the construction of a Cook County Department of Corrections Residential Treatment Unit ("RTU Building"). County–Eiben Contract ¶ 7.1 stated:

Drawings and specifications as instruments of service are and shall remain the property of the Architect whether the Project for which they are made is executed or not. The County shall be permitted to retain specifications for information and reference in connection with the County's use and occupancy of the Project. The drawings and specifications shall not be used by the County on other projects, for additions to this Project, or for completion of this Project by others, except by agreement in writing and with appropriate compensation to the Architect.

Part I of the County–Eiben Contract described the "Project" in these terms:

complete architectural, structural, mechanical and electrical services related to the design and construction of the new R.T.U. Building for the Cook County Department of Corrections at 26th and California Avenue, Chicago, Illinois

Ten years later Cook County entered into contracts with Ellerbe and Tishman to work on the New Cermak Health Services Facility Project ("New Cermak Project"). One part of the New Cermak Project involved the renovation of a wing occupying a portion of the RTU Building originally designed by Eiben (the renovation involved a corner room of some 2,300 square feet in a building that, according to the original plans, comprised a gross area of over 77,000 square feet). Ellerbe provided architectural and engineering services for the New Cermak Project, and Tishman was the Development Manager. Epstein was an architectural subcontractor to Ellerbe.

1. Eiben had also sued Tishman Construction Corp. ("Tishman"), but he has now settled his claims against Tishman.

2. For more convenient reference, this opinion will simply use the "M." abbreviation in citing to specific portions of any motion.

3. From the identity of language in the next-quoted County–Eiben Contract ¶ 7.1 and in the architect's contract at issue in the later-cited *Wright v. Tidmore* case, as well as from

this Court's extensive experience as a practitioner representing both architects and owners-developers of real estate, it seems clear that the quoted provision is part of an American Institute of Architects standard form. But as the ensuing discussion reflects, the quoted provision is unambiguous as such and is hence readily capable of construction without any need to resort to the contra proferentem doctrine.

More specifically, the RTU Building renovation aspect of the New Cermak Project included two components. One involved transforming the corner room in the RTU Building that Eiben had initially designed as a large room that could accommodate about 30 beds (for a drug treatment center) into a tuberculosis isolation unit comprising 10 smaller isolation rooms (Ellerbe M. 1 & 2 ¶¶ 9, 14–15), while the other called for providing a new mechanical system and modifying the electrical and plumbing systems as necessary in that section of the RTU Building (*id.* ¶ 9).

In connection with their work on the RTU Building renovation, Ellerbe and Epstein obtained Eiben's original RTU Building drawings from Cook County. Ultimately two of Eiben's drawings were included in a set of "bid documents" provided to subcontractors to aid them in bidding on the New Cermak Project. Eiben's drawings were labeled "Available Information." Also included in the bid documents were new architectural plans for the renovation—allegedly created at least in part by subcontractor Environmental System Design, Inc. ("ESD")—that Eiben asserts were closely based on his original drawings of the RTU Building.

### Photocopying of RTU Drawings

Ellerbe's first motion in limine, joined in by Epstein, seeks to exclude all evidence and argument claiming infringement via the photocopying of the two Eiben drawings and their inclusion in the bid documents. Both movants argue that because Eiben's contract with Cook County expressly permitted the use of "reproducible copies" of his drawings "in connection with the County's use and occupancy" of the RTU Building, their copying of the drawings for inclusion in the set of bid documents was permissible, foreclosing Eiben's contention that the copying constituted infringement. In essence, the motion seeks a ruling as a matter of law that the County–Eiben Contract permitted the copying and distribution of Eiben's drawings for the renovation project, thus knocking out Eiben's copyright infringement claim in that respect.

To analyze that response it is necessary to parse exactly for what purposes the County–Eiben Contract granted permission to use the Eiben-prepared drawings. For that purpose it is worth adding emphasis to the relevant language in the already-quoted Paragraph 7.1:

> *The County shall be permitted to retain copies,* including reproducible copies, of drawings and specifications *for information and reference in connection with the County's use and occupancy of the Project. The drawings and specifications shall not be used by the County on other projects, for additions to this Project, or for completion of this Project by others,* except by agreement in writing and with appropriate compensation to the Architect.

In that regard, the pertinent legal issue is whether the renovation of the RTU Building was "in connection with the County's use and occupancy of the [original] Project" or would instead be considered some "other project[ ]" or an "addition[ ] to this Project" or "completion of this Project."

■■ Illinois law, which provides the substantive rules of decision as to the County–Eiben Contract (*Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1036–37 (7th Cir.1998)), begins by examining whether the contract is *unambiguous* (so that the court looks only within its "four corners" to determine its meaning) or is *ambiguous* (so that the court can allow extrinsic evidence to aid interpretation). *Bourke, id.* at 1036 summarizes Illinois contract law on whether a contract is unambiguous or ambiguous:

> In Illinois, "[a]n instrument is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from

the general language of the contract. A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms." *Flora Bank & Trust v. Czyzewski,* 222 Ill.App.3d 382, 164 Ill.Dec. 804, 583 N.E.2d 720, 725 (1991) (internal citations omitted). That ambiguity vel non determination is a matter of law for the court to decide (*id.*). If the contract is found to be ambiguous, the finder of fact can then evaluate extrinsic evidence to determine the contract's meaning (*id.* at 1037).

■ Here the County–Eiben Contract is unambiguous as a matter of law, for it does not have two reasonable interpretations—certainly not so in the respect now at issue, and doubtfully in any respect at all. Here the County's relevant activity (involving a small part of a much larger project—Ellerbe's fee for the entire New Cermak Project was $544,167, of which less than 5% (just $23,554) represented the fee for the RTU Building renovation) was clearly one of modifying in part its "use and occupancy of the Project" (that is, of the RTU Building). That alteration in the use and occupancy of a fractional part of the RTU Building cannot arguably be characterized as an "other project[ ]" within the contract's meaning. Nor of course can that alteration fairly be labeled an "addition" to the Project (that is, to the RTU Building itself), for it was a purely internal modification rather than a building addition. Nor can it be considered to be the "completion of this Project by others," for Eiben had admittedly remained involved in the RTU Building's construction through its completion—and of course the ten-year-later change in the use of a corner of one of the RTU Building's floors was in no way a part of the building's "completion."

Eiben points to no authority to support his position, nor can he in light of the clear scope of the permission that he had grant-ed to County to retain (and perforce to use) his drawings "for information and reference." For its part Ellerbe cites to *Wright v. Tidmore,* 208 Ga.App. 150, 430 S.E.2d 72 (1993), which dealt with a like infringement claim by an architect in the face of a contract provision (quoted *id.* at 72) identical to the one now under consideration. It is unnecessary to analyze whether the fact situation in *Wright* (which is after all a Georgia decision submitted in a case controlled by Illinois law) does or does not present a sufficient parallel to the issue before this Court. Instead, as already stated, it is the plain language of County–Eiben Contract ¶ 7.1 that dictates the result.

In sum, this Court will exclude all evidence and argument relating to the photocopying of Eiben's drawings and to the inclusion of those drawings in the New Cermak bid documents. That Ellerbe–Epstein motion is granted.

### Use of RTU Drawings

Ellerbe's closely-related second motion, also joined by Epstein, succeeds for similar reasons. Movants argue for the exclusion of all evidence regarding the use of Eiben's drawings as points of reference in creating the plans for the renovation of the RTU Building. They rely on the same rationale that this opinion has just espoused: that the County–Eiben Contract clearly permits such use, so that such evidence is irrelevant under Fed.R.Evid. ("Rule") 401 or, if not, is unfairly prejudicial, confusing or misleading under Rule 403.

■ Eiben protests that the Ellerbe–Epstein motion equates to a request for a ruling, as a matter of law, that County–Eiben Contract ¶ 7.1 precludes any argument that liability may stem from the creation of a derivative work for the RTU Building renovation.[4] But that contention

---

4. Copying from a copyrighted item constitutes infringement if the derivative work is "substantially similar" to the underlying work

(*Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 508–09 (7th Cir.1994)). That is the basis for the theory of recovery

is a kind of cart-before-the-horse position. Once this Court has decided (as it has in the preceding section of this opinion) that the use of Eiben's drawings "for information and reference" in conjunction with the County's "use and occupancy" is something that Eiben permitted from the outset, any contention of *unauthorized* use by Ellerbe and Epstein in that regard drops out of the case—and of course it is such unauthorized use that constitutes an essential element of every copyright infringement claim, whether direct or derivative.

There might perhaps be another arguable string to Eiben's derivative-work bow: his contention that what was done in preparing the new architectural plans for the renovation involved a more extensive use of Eiben's work than simply "for information and reference." But any such argument is scotched by the other portion of County–Eiben Contract ¶ 7.1 in which the parties specifically identified the three things for which the County could *not* use the drawings and specifications without Eiben's written agreement and without providing him "appropriate compensation." This opinion has already explained that the renovation of the RTU Building was clearly *none* of those three things, but was rather activity "in connection with the County's use and occupancy of the Project." [5] That presents a classic instance of "expressio unius est exclusio alterius."

Hence this Court will also exclude evidence of that alleged infringement as well. This second motion in limine is granted too.

#### *"Actual Damages"*

Under one portion of 17 U.S.C. § 504(b):

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement. . . .

Ellerbe's third motion—also joined in by Epstein—is to bar any evidence of Eiben's purported "actual damages" as overly speculative. To that end the movants rely on Rules 401 and 403, arguing that any reference to speculative actual damages is irrelevant or, in the alternative, is unfairly prejudicial, confusing or misleading. And in that respect they urge (Ellerbe M. 3 ¶ 17):

If Eiben proves that Ellerbe Becket infringed his copyrights, his "actual damages" should be limited by the amount of "appropriate compensation" that would be owed under Paragraph 7.1 of Eiben's contract with Cook County.

■ That statement accurately reflects that one basis for calculating Eiben's actual damages, should infringement be proved, is the "value of use" of the drawings, which might also be thought of as what their acquisition cost to Ellerbe and Epstein would have been (see *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357, 361–62 (7th Cir.1985); see also *Eales v. Environmental Lifestyles, Inc.*, 958 F.2d 876, 880 (9th Cir.1992), measuring actual damages as the lost fair market value—based on the familiar willing buyer-willing seller approach—of the architectural plans at issue). On that score Ellerbe–Epstein urge that because Eiben has provided only a speculative basis for proving such actual damages, he should be precluded from prejudicing the jury with presentation of such evidence. They point out that Ei-

that Ellerbe and Epstein attempt to eliminate with this motion.

5. Where a change in the use of a portion of a building is involved, encompassing the partitioning of a previously open area into a number of rooms and the creation of necessary modifications in the systems serving that space, it is of course inevitable that the old plans must be drawn upon to prepare the new plans. Eiben's beef that the new plans were derived from and were substantially similar to

his earlier drawings is much like Portia's contention that the contracted-for pound of flesh could not be extracted unless it were done without any accompanying drop of blood (William Shakespeare, *Merchant of Venice* act 4, sc. 1)—but here Eiben's consent to use of his work "for information and reference" necessarily carried with it the right to use his drawings as the basis for the new plans covering the revisions in use of the space.

ben's claim (ranging from $100,000 to $150,000) is supported by nothing more than Eiben's assertion that he would have demanded that much—an assertion that Eiben states is based at least in part on a percentage of the renovation costs.

■ It is certainly true that an actual damages claim can be so completely speculative that it must be denied (see *Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 432 (8th Cir.1992)). *Pfanenstiel, id.* affirmed a district court's ruling that actual damages beyond the infringer's profits were too speculative because of the "barren record" on which they were based. There the "barren record" consisted solely of the architect's assertion of what he would have charged, a situation that is mirrored here.

■ In an effort to escape that result, Eiben has responded to the current motion in limine by asserting that he intends to present not only his own testimony about what he would have charged for use of his RTU Building drawings, but also evidence of the accepted practices and procedures within the Cook County architectural community. That simply won't do. This lawsuit has been pending for almost 20 months. Discovery has been closed since March 12, 1999—an order that this Court never enters except with the concurrence of counsel,[6] just as it always sets the due date for submission of a proposed FPTO on the same basis. That submission, which resulted in the entry of this case's FPTO on May 10, 1999, confirmed the readiness of all parties to go to trial at any time thereafter.[7] Eiben cannot properly attempt to take unfair advantage now by

seeking to cure any deficiencies in his preparation to which his adversaries' motions in limine have alerted his counsel. Accordingly the Ellerbe–Epstein third motion in limine is granted.

### Revenue from the New Cermak Project

■ Next Ellerbe alone moves to exclude evidence of its gross revenue from any portion of the New Cermak Project other than the RTU Building renovation, which was only one comparatively small aspect of the larger endeavor. Ellerbe observes that its alleged infringement relates only to the renovation of the RTU Building, the profits from which are capable of easy extraction from the overall profits derived from the entire New Cermak Project.

If infringement should be proved, Eiben is entitled not only to the already-discussed actual damages but also to "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages" (another part of 17 U.S.C. § 504(b)). To establish such profits the copyright owner must present proof of the infringer's gross revenue, and the infringer must respond with proof of its deductible expenses and any elements of profit that are attributable to factors other than the assertedly infringed work (*id.*). Ellerbe argues that under that statutory provision Eiben's demonstration of Ellerbe's gross revenue should be apportioned and limited to Ellerbe's revenue from the RTU Building renovation.

According to *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir.1989), quot-

---

6. Indeed, as often happens this Court had initially set a late February 1999 close-of-discovery date (with the agreement of all counsel) back in October 1998, and it then extended the date by about two weeks because counsel identified a few loose ends that needed completion.

7. Consistently with its practices just described in the text, this Court regularly couples its entry of the FPTO (as it did here) with an

order that requires counsel to submit letters as to their (and their witnesses') respective unavailabilities for trial during the next few months. It then uses that information to set the case for trial, just as is being done at the end of this opinion. But that courtesy extended to the litigants is *not* a license for anyone to conduct any further discovery after discovery has already been formally closed with the concurrence of all parties.

ing *Sheldon v. Metro–Goldwyn Pictures Corp.*, 309 U.S. 390, 402, 60 S.Ct. 681, 84 L.Ed. 825 (1940):

> An infringer is entitled to an apportionment [of its profits] when "the evidence is sufficient to provide a fair basis of division so as to give the copyright proprietor all the profits that can be deemed to have resulted from the use of what belonged to him."

In this case the apportionment is easy and clear. Ellerbe's claimed infringement related only to the RTU Building renovation and did not spill over into any other part of the New Cermak Project.

Eiben Mem. ¶ 56 claims that he could establish at trial that "Ellerbe Becket and Epstein underbudgeted the portion of the entire Cermak Project relating to work on the RTU Building, thereby taking a larger profit in the other areas of the project which were the subject of one single contract between Ellerbe Becket and the County." But Eiben cites no evidence on which to base that assertion. With all discovery having been closed, and with no pad having been identified from which Eiben proposes to launch that line of attack, he is precluded on relevance grounds from introducing evidence of Ellerbe's gross revenue from the New Cermak Project as a whole. This fourth motion in limine is also granted.

### Alleged Copyright Infringement by ESD

Next Ellerbe (this time again joined by Epstein) moves to exclude evidence and argument as to alleged copyright infringement by ESD, the subcontractor architectural firm that may have played a role in preparing the assertedly infringing RTU Building renovation plans. Movants argue that ESD's claimed infringement, which is at issue in a separate pending lawsuit, is irrelevant to Eiben's case against Ellerbe and Epstein under Rule 401, or in the alternative is inadmissible under Rule 403.

Eiben responds that evidence of ESD's alleged infringement is relevant because it provides two of the bases—contributory infringement and vicarious liability—for Eiben's claims that Ellerbe and Epstein are liable for the creation of unauthorized derivative works. Under those two theories, even if a plaintiff cannot prove a defendant's direct involvement in the alleged infringement, plaintiff can still recover from defendant on the basis of its vicarious responsibility (see, e.g., *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261–62 (9th Cir.1996)) or its contributory infringement (see, e.g., *id.* at 264; *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 790–92 (5th Cir.1999)). Understandably, of course, any such derivative liability must be predicated on a third party's direct infringement (*Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d 693, 706 (2d Cir.1998), quoting 2 Paul Goldstein, *Copyright* § 6.0 (1996) ("For a defendant to be held contributorily or vicariously liable, a direct infringement must have occurred")). Hence the issue of ESD's infringement could potentially be directly relevant to the liability of Ellerbe and Epstein if Eiben were to rely on theories of vicarious liability or contributory infringement.

■ But Ellerbe–Epstein justifiably complain that this is the first they have learned of Eiben's intention to do so. Eiben alleged neither vicarious liability nor contributory infringement in his First Amended Complaint. Nor did he specifically identify either of those theories in the FPTO.[8] None of the parties listed a representative from ESD as a potential witness in the FPTO (FPTO Sched. D), and Ellerbe represents (without contradiction by Eiben) that the parties did not conduct discovery as to ESD or its actions. With that background and in light of what has

---

8. Eiben did specify this as a contested issue of law (FPTO 6):

> Whether Environmental System Design's Architectural Drawings and Specifications

were unauthorized derivative works prepared from Plaintiff's Architectural Drawings which infringed Plaintiff's copyright in and to those works?

already been said as to the third motion in limine, Eiben may not rely on theories of contributory infringement or vicarious liability at trial.

It is perhaps possible that some evidence of ESD's actions in connection with the creation of the allegedly infringing plans could be relevant to Eiben's claim of direct infringement against Ellerbe and Epstein. Accordingly the present grant of this Ellerbe–Epstein motion is made subject to Eiben's promptly explaining (on or before August 6, 1999) specifically (1) what evidence he would intend to introduce relating to ESD's actions, (2) how he would intend to use it and (3) how it is assertedly relevant. At that point Ellerbe and Epstein will have the opportunity to respond (on or before August 20, 1999) as to why even such more limited use of the challenged evidence is inappropriate.

### Ellerbe's Fees, Revenues or Profits From Other Projects

Ellerbe's final motion is for the exclusion of evidence or argument regarding its fees, revenues or profits from other projects. As Eiben does not object to that motion, it is granted.

### Conclusion

In sum, the Ellerbe and Epstein motions in limine are granted in their entirety (subject only to the possible limited revision, based on future submissions by the parties, of this opinion's ruling as to ESD's alleged infringement). This action will go to trial in accordance with the ground rules established by the FPTO, by its accompanying May 10, 1999 minute order and by this opinion. Based upon the parties' earlier letters blocking out their respective times of unavailability for trial, the trial is set to begin at 9:30 a.m. December 7, 1999 (the first available date that meshes with the parties' and this Court's schedules).